473 F.2d 84
 153 U.S.App.D.C. 373, 96 P.U.R.3d 187
 MUNICIPAL INTERVENORS GROUP, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent, Northern Natural Gas
Company, et al., Intervenors.
MUNICIPAL INTERVENORS GROUP, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent, Cities Service Gas
Company, et al., Intervenors.
 Nos. 71-1998, 72-1006.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued June 30, 1972.
Sept. 29, 1972.
 
 Mr. Platt W. Davis, III, Staff Counsel, F. P. C., of the bar of the Supreme Court of Texas, pro hac vice, by special leave of Court, with whom Messrs. Gordon Gooch, Gen. Counsel, Leo E. Forquer, Sol., and George W. McHenry, Jr., First Asst. Sol., F. P. C., were on the respondent's petition for rehearing.
 Mr. Bryce Rea, Jr., Washington, D. C. (appointed by this Court as amicus curiae).
 Before FAHY, Senior Circuit Judge, and McGOWAN and LEVENTHAL, Circuit Judges.ON RESPONDENT'S PETITION FOR REHEARING
 LEVENTHAL, Circuit Judge:
 
 
 1
 The issue in this case is whether this court's jurisdiction to entertain and decide petitions by aggrieved parties to review orders of the Federal Power Commission (FPC) issued under the Natural Gas Act[1] applies to a petition to review an FPC order permitting natural gas companies to put into effect, subject to refund, increases in rates upon a finding that the increases are "consistent with the purposes of the Economic Stabilization Act of 1970, as amended." In view of the judicial review provisions of the Economic Stabilization Act, as amended in 1971, we hold this court lacks jurisdiction.
 
 
 2
 A. The FPC's Orders and Pertinent Regulations under Economic Stabilization Act
 
 
 3
 Various natural gas companies, Cities Service Gas Company, Northern Natural Gas Company, and Panhandle Eastern Pipe Line Company, filed increases in rates to become effective in April 1971. Exercising its authority under Sec. 4(e) of the Natural Gas Act, 15 U.S.C. Sec. 717c(e), the FPC entered upon a hearing concerning the lawfulness of the increased rates, and suspended their operation until October 1971 (five months beyond the dates they were scheduled to take effect, the maximum permitted by Sec. 4(e)).
 
 
 4
 On August 15, 1971, prior to the expiration of the suspension period, the President issued Executive Order No. 11615, 3 C.F.R. 199 (1972), exercising his authority[2] under the Economic Stabilization Act of 1970, 12 U.S.C. Sec. 1904 note (Supp.1971), to issue appropriate orders for the stabilization of prices, rents, wages, and salaries. Section 1(a) of that order froze prices, including the rates of natural gas companies, for 90 days at the highest level charged during the 30-day period ending August 14, 1971. Section 2(a) thereof created the Cost of Living Council as an agency of the United States, and Sec. 3(a) delegated to the Council, with exceptions not relevant here, "all of the powers conferred on the President by the Economic Stabilization Act of 1970." Section 4(b) provided that the Council "may redelegate to any agency, instrumentality or official of the United States any authority under this Order, and may, in administering this Order, utilize the services of any other agencies, Federal or State, as may be available and appropriate."
 
 
 5
 On August 18, 1971, the FPC issued Order No. 437, 18 C.F.R. Sec. 2.90 (1972), a Statement of General Policy To Implement the Economic Stabilization Act and Executive Order No. 11615. Section 2.90(b) (3) of Order No. 437 provided that increases in rates to become effective after August 14, 1971, including increases which would take effect by reason of the termination of a suspension period, "shall not take effect for the duration of the period set forth in the Executive Order [11615], including any extension or modification thereof, or for the duration of any suspension period set by the Commission pursuant to the Natural Gas Act or the Federal Power Act, whichever is longer."
 
 
 6
 On October 15, 1971, the President issued Executive Order No. 11627, 3 C.F.R. 218 (1972), superseding Executive Order No. 11615, but reasserting the need to stabilize prices. In addition, the President reaffirmed his delegation of authority to the Cost of Living Council and created the Price Commission to exercise such control over prices and rents as the Cost of Living Council delegated to it. On October 16, 1971, the Council issued its Order No. 4, 6 C.F.R. App. B at 156 (Mar.1972), delegating to the Price Commission "responsibility for . . . stabilization of prices and rents in conformity with the Executive Order [11627]" and empowering the Price Commission to redelegate any of its authority to "any agency, instrumentality or official of the United States" and to "utilize the services of any other agencies, Federal or State, as may be available and appropriate."
 
 
 7
 Pursuant to this delegated authority, the Price Commission issued regulations, effective November 14, 1971, permitting increases in prices and rents with certain limitations, 36 F.R. 21953-55. Section 300.016(a) of these Regulations permitted regulated public utilities, including natural gas companies, to increase their rates provided that the increase was approved by their regulating agency. On November 17, 1971, the Price Commission amended Sec. 300.016(a) to reserve to itself "the right to review and limit the amount of any such requested increase, ordered increase, or other authorized increase." 36 F.R. 22013-14. Section 300.016(b) thereof authorized increases which had been approved by a regulatory agency before November 14, 1971, to be made effective after November 13, 1971, provided the agency first reviewed them "with regard to their consistency with the purposes of the Economic Stabilization Act of 1970, as amended. . . ." 36 F.R. 21954. If the agency certified that in its opinion such consistency existed, the regulated company had to present the certification and its increased rate schedule to the Price Commission for approval. See 6 C.F.R. Sec. 300.16 (Jan.1972).
 
 
 8
 On November 16, 1971, the FPC reaffirmed, with some modification, its Statement of General Policy To Implement the Economic Stabilization Act, by issuing Order No. 437A, 18 C.F.R. Sec. 2.90a (1972). Order No. 437A amended Order No. 437 by providing that increases in rates that were prevented from being made effective by Executive Orders 11615 and 11627 and Order No. 437 "will be reviewed for consistency with the purposes of the Economic Stabilization Act of 1970, as amended," and "[a]fter such review, increases in rates or changes approved as being consistent with such purposes" will be effective November 14, 1971. Order No. 437A was accompanied by a finding: "(5) The purposes of the Economic Stabilization Act of 1970 are consistent with the regulatory standards contained in the Federal Power Act and the Natural Gas Act and with Commission implementation and application of these standards in regulatory proceedings." 36 F.R. 22368 (1971).
 
 
 9
 On November 19, 1971, the Commission issued Order No. 437 A-1 and Order No. 437A-2, (Docket Nos. R-427) permitting, inter alia, the rate increases proposed by Cities Service, Northern, and Panhandle Eastern to become effective subject to refund, as of November 14, 1971, pending Commission determination as to their justness and reasonableness.
 
 The Commission further stated:
 
 10
 In determining the justness and reasonableness of such rate increase filings, the regulatory standards which the Commission will implement pursuant to the provisions of the Natural Gas Act are consistent with the purposes of the Economic Stabilization Act of 1970. While consumers are protected from excessive charges since the increased rates will be collected subject to refund with interest, the filing companies will not be deprived of revenues to which they may be entitled under the Constitution and applicable statutes pending the Commission's determination of the justness and reasonableness of their new schedules.
 
 
 11
 Orders 437A-1 and 437A-2 each concluded as follows:
 
 
 12
 "The Commission finds:
 
 
 13
 To permit the rate increases applied for in the dockets listed in Appendix A to become effective, subject to refund with interest, while pending Commission determination as to their justness and reasonableness, is consistent with the purposes of the Economic Stabilization Act of 1970, as amended.
 
 The Commission orders:
 
 14
 (A) The rate increases applied for in the dockets listed in Appendix A may become effective, subject to refund with interest, as of 12:01 a. m., November 14, 1971, while pending Commission determination as to their justness and reasonableness.
 
 
 15
 (B) This order shall constitute the certification of consistency with the purposes of the Economic Stabilization Act of 1970, as amended, as required by Sec. 300.016(b) of Chapter III, Title 6 of the Code of Federal Regulations."
 
 
 16
 On November 30, 1971, the Municipal Intervenors Group, which consists of 69 municipal gas and electric distribution systems, filed an application for rehearing and a request for stay of Order Nos. 437A, 437A-1, and 437A-2, insofar as those orders related to the rate increases of Cities Service, Northern, and Panhandle Eastern. By order issued December 30, 1971, the Commission denied the requested relief (Docket No. R-427). With respect to the application for rehearing, the Commission rejected the argument of the Municipal Intervenors that a finding must be made as to the justness and reasonableness of the rate increases prior to permitting such rates to go into effect, subject to refund. After noting that these rates would have gone into effect but for the 90-day freeze, the Commission stated that:
 
 
 17
 Where such increases are consistent with the Economic Stabilization Act and Executive Order No. 11627, we cannot, contrary to Municipal's position, choose to suspend rate increases beyond our statutory authority.
 
 
 18
 Pursuant to Sec. 19 of the Natural Gas Act, Municipal Intervenors Group filed a petition for review of Orders Nos. 437A-1 and 437A-2 of the FPC, together with a motion for an emergency stay of those orders. It specifically stated that its position is "that the contested rate orders violate the Regulations of the Federal Price Commission." More particularly, it claimed that Sec. 300.16(a) of those regulations, permitting a utility to charge a rate in excess of the base price "if such increase has been approved by a regulatory agency" requires an increase approved on the merits.
 
 
 19
 By order issued February 3, 1972, this court sua sponte dismissed the petitions for review for lack of jurisdiction, relying on Secs. 211(a) and (h) of the Economic Stabilization Act, as amended December 22, 1971, Public Law 92-210, 12 U.S.C. 1904 note (Supp.1971). On March 23, 1972, the Commission filed a petition for rehearing. By order issued May 2, 1972, this court granted rehearing, set the jurisdictional issue for oral argument, and appointed Bryce Rea, Jr., Esq., as amicus curiae to file a brief in support of the position that the court lacks jurisdiction.
 
 
 20
 B. Judicial Review Provisions of Natural Gas Act and Economic Stabilization Act
 
 
 21
 This case requires us to consider the relationship of the judicial review provisions of the Natural Gas Act of 1938, as amended, and of the Economic Stabilization Act of 1970, as amended.
 
 
 22
 Section 19(b) of the Natural Gas Act provides that any "party to a proceeding under [the Natural Gas Act] aggrieved by an order issued by the Commission in such proceeding" may have judicial review of the order in the United States Court of Appeals for the District of Columbia Circuit by filing a petition for review thereof. Upon the filing of the petition jurisdiction is vested in this court and that jurisdiction is exclusive upon the filing of the record before the FPC. 15 U.S.C. Sec. 717r(b).
 
 
 23
 The FPC's Orders 437A and 437A-2 are orders terminating suspensions. Amicus points out that there is a question whether such orders, when issued under the Natural Gas Act, are reviewable for abuse of discretion, or whether judicial review is available only in case of a claim that the action taken "is plainly without any statutory authority or in defiance of a 'clear and mandatory' statutory command or reflects an error evident on the face of the papers . . . ." Municipal Light Boards v. FPC, 146 U.S.App.D.C. 294, 305, 450 F.2d 1341, 1352 (1971), cert. denied, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972). We need not consider that issue, for we are confronted in this case with a more rigorous denial of jurisdiction.
 
 
 24
 Since Sec. 4(e) of the Natural Gas Act, 15 U.S.C. Sec. 717c(e), limits the FPC's power to suspend rate increases by setting a maximum period of five months for the suspension, its Order 437 extending the periods of suspension indefinitely could not have been an exercise of authority conferred by the Natural Gas Act. Rather, Order 437 was-as the FPC said it was-an agency action taken in implementation of the Economic Stabilization Act and Executive Order 11615. It was taken on the premise that the Economic Stabilization Act gave the President authority to supersede the Natural Gas Act and that his Executive Order 11615 did so.[3] So too, the FPC's Orders Nos. 437A, 437A-1 and 437A-2 were specifically bottomed on the Economic Stabilization Act, Executive Order 11627 and Sec. 300.16 of the Regulations of the Price Commission.
 
 
 25
 The Price Commission's Regulations, Sec. 300.16, 6 C.F.R. Sec. 300.16 (Jan.1972) provided that the rates of regulated public utilities, defined to include natural gas companies, could not be increased without approval of the regulatory agency. Section 300.16(b) provided that increases which were approved by a regulatory agency before Nov. 14, 1971, and then not permitted to take effect due to E.O. 1165, "may take effect" as to transactions after Nov. 13, 1971, provided that "before the increases may take effect, the regulatory agency . . . shall review the increases with regard to their consistency with the purposes of the Economic Stabilization Act of 1970, as amended, and certify that the increases . . . are consistent with those purposes", the certification to be supplied to the Price Commission by the regulated utility.
 
 
 26
 The FPC's Orders Nos. 437A-1 and 437A-2, which permitted the increases challenged in these cases to take effect, expressly and clearly are the agency actions-(a) review for consistency with the purposes of the Economic Stabilization Act, and (b) certification to the Price Commission-provided for in Sec. 300.16(b) of the Price Commission's Regulations. Whether or not those orders were lawfully issued will depend upon whether the Price Commission acted lawfully in providing for such actions by other agencies, and, if so, whether the FPC took such actions conformably to the Price Commission's regulations. Both of these questions arise under the Economic Stabilization Act and regulations and orders issued pursuant thereto. Judicial review of Orders Nos. 437A-1 and 437A-2 is governed, not by the provisions for judicial review of orders under the Natural Gas Act, but by the provisions for judicial review of orders under the Economic Stabilization Act. Section 211(a) of the Economic Stabilization Act, as amended in 1971, specifically gives the District Courts of the United States "exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder. . . ."
 
 
 27
 This court, like the other United States courts of appeals, has been given no jurisdiction to decide or entertain review of such controversies. Appellate review authority is concentrated exclusively in a special court, the Temporary Emergency Court of Appeals, established as a national court of appeals in order to prevent the possibility of conflicting rulings by intermediate United States appellate courts, and danger to the anti-inflation program. See, Section 211(b) of the Economic Stabilization Act, as amended in 1971, 12 U.S.C. Sec. 1904 note. (Supp.1971).
 
 
 28
 The FPC says that Sec. 300.16 of the Price Commission's Regulations did not constitute a delegation of authority to FPC, since the Price Commission made no delegation in terms, and it specifically reserved "the right to review and limit the amount of any such requested increase, ordered increase, or other authorized increase." Certainly, this regulation of the Price Commission made no delegation of final authority to the FPC. Indeed, the FPC stood on no higher ground under the Price Commission regulations than any state agency with jurisdiction over utility rates. And as has already been noted, Sec. 4 of Order No. 4 of the Cost of Living Council, provided that the Price Commission may redelegate its "authority," under Executive Order 11627, only to United States agencies, and its involvement with State agencies was put in terms of authority to "utilize the services of any other agencies, Federal or State."
 
 
 29
 With all that, there is a limited delegation under Sec. 300.16, in the provision for certification by FPC, or State agencies, regulating rates of utilities, concerning consistency of increases with the purpose of the Economic Stabilization Act. It is at least the kind of delegation of authority, to screen and analyze the problem and make a report (certification), that has been commonly established in the Federal administrative process through the medium of trial examiners. The Price Commission's regulation was not written in terms of command to agencies regulating utilities, nor did it impose on them any obligation. The frame of reference to regulatory agencies seems to have carefully taken into account the problem posed by the fact that in most cases the agencies regulating rates of public utilities are state agencies. In form, the regulation was addressed solely to the utility as to requirements necessary for a rate increase. Yet, in substance, the certification requirement was a delegation to the regulatory agency of the screening and reporting authority implicit in the certification. Any regulatory agency was apprised by this regulation that such a certification was not the action of a volunteer, but of an instrumentality of government whose aid in implementation of the Economic Stabilization Act was considered by the Price Commission to be a significant ingredient in its procedures.
 
 
 30
 The FPC is quite right in noting that its exercise of authority conferred by the Natural Gas Act, may, and in some instances must, take account of policies set forth in another Federal statute, without undercutting the quality of its action as one taken under the Natural Gas Act and reviewable in accordance with its procedures.[4] It could also be said that in a certain sense the FPC's action-of making a determination of consistency with the Economic Stabilization Act of 1970-must necessarily reflect an authority granted by at least the general framework of the Natural Gas Act[5] to cooperate both with the Price Commission directly and with utilities who are subject both to its jurisdiction and that of the Price Commission. The law takes into account the necessities of government regulation, and in particular the needs of cooperation and coordination at the joints of jurisdiction where two or more agencies of government are involved. The supple doctrines of primary jurisdiction and exhaustion of administrative remedies have permitted working relationships between courts and agencies.[6] The law presumes implied power in a government agency-unless precluded by a contrary provision expressed or clearly discernible in its organic statute-to cooperate with other government agencies concerning intermesh of jurisdiction or other matters of mutual concern.
 
 
 31
 The foregoing considerations do not undercut the central reality of this case, that a claim that the FPC has erred in its determination that a rate increase is consistent with the Economic Stabilization Act, is a claim arising under that Act, and that Congress has made clear an intent for a special and limited judicial review of any such claim of illegality of agency action.
 
 
 32
 Rates of utilities are controlled under the Economic Stabilization Act of 1970, even though they are also controlled under other state and Federal laws. That was a conscious choice by Congress-a departure from its prior course of exempting regulated utilities from controls under the Emergency Price Control Act of 1942 and the Defense Production Act of 1950. The circumstance that utilities are subject to two types of regulatory control raises the possibility of two types of judicial review. We do not explore this problem further, because it suffices for this case to say that if this possibility exists it does not undercut the goals of Congress in providing only limited avenues for judicial review of cases arising under the Economic Stabilization Act. Those goals are: "(1) speed and consistency of decisions in cases arising under the Act, (2) avoidance of any breaks or stays in the operation of the Stabilization Program, and (3) relief for particular persons aggrieved by the operation of the program." S.Rep. No. 92-507, 92d Cong., 1st Sess. 10, U.S.Code Cong. & Admin. News, 1971, p. 2292. To accomplish these ends the Congress gave the United States District Courts exclusive original jurisdiction, and the Temporary Emergency Court of Appeals exclusive appellate jurisdiction,[7] of cases arising under the Economic Stabilization Act and regulations thereunder.
 
 
 33
 The petitions to review are dismissed for lack of jurisdiction.
 
 So ordered.[8]
 
 
 [1]
 Section 19 of the Natural Gas Act, 15 U.S.C. Sec. 717r(b)
 
 
 [2]
 This delegation of authority to the President by Congress was upheld in Amalgamated Meat Cutters & Butcher Workmen v. Connally, 337 F.Supp. 737 (D.C.D.C., 1971, 3-judge court.)
 
 
 [3]
 Thus, Sec. 2.90(b) (1) of Order No. 437, 18 C.F.R. Sec. 2.90 (1972), provided that in "any situation where it is unlawful [under the Natural Gas Act or the Federal Power Act] to collect rates or charges except in accordance with a rate schedule in effect pursuant to the Regulations of the [FPC], no natural gas company, public utility, nor licensee . . . will be deemed in default of any law, or regulation thereunder, administered by the Commission because [it] has complied with Executive Order 11615, or any modification thereof."
 
 
 [4]
 Thus, while the Commission has no authority to enforce the antitrust laws, California v. FPC, 369 U.S. 482, 488-489, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962); City of Pittsburgh v. FPC, 99 U.S.App.D.C. 113, 126, 237 F.2d 741, 754 (1956), it has an obligation to consider such allegations in certain types of proceedings before it. Northern Natural Gas Co. v. FPC, 130 U.S.App.D.C. 220, 228, 399 F.2d 953, 961 (1968). This court has also said that under the National Environmental Policy Act, 42 U.S.C. Sec. 4321 et seq. (Supp.1972), all federal agencies, including the Commission, must consider environmental issues just as they consider other matters within their mandates, Calvert Cliffs' Coordinating Committee, Inc. v. AEC, 146 U.S.App.D.C. 33, 36, 449 F.2d 1109, 1112 (1971), even though resolution of these issues may be outside the agency's jurisdiction. Natural Resources Defense Council, Inc. v. Morton, 148 U.S.App.D.C. 5, 458 F.2d 827 (1972)
 
 
 [5]
 The authority of the FPC to issue regulations to implement the Natural Gas Act is liberally construed. FPC v. Louisiana Power & Light Co., 406 U.S. 621, 642, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972); Mesa Petroleum Co. v. FPC, 441 F.2d 182 (CA 5, 1971); Niagara Mohawk Power Corp. v. FPC, 126 U.S.App.D.C. 376, 379 F.2d 153 (1967)
 
 
 [6]
 M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289 (1971); City of Lafayette v. FPC, 147 U.S.App.D.C. 98, 454 F.2d 941 (1971), cert. granted sub nom. Gulf States Utilities v. FPC, 406 U.S. 956, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972); Mobil Oil Corp. v. FPC, 149 U.S.App.D.C. 310, 463 F.2d 256 (1971), cert. denied 406 U.S. 976, 92 S.Ct. 2413, 32 L.Ed.2d 676 (1972)
 
 
 [7]
 The District Courts' jurisdiction is limited to the issuance of declaratory judgment of unlawfulness, which may then be used as a basis for a request for injunctive relief in the Temporary Emergency Court of Appeals
 
 
 [8]
 In the view we take of the case, we have no occasion to consider the question raised by amicus curiae, whether in any event the petition to review must be dismissed because of failure of Municipal Intervenors Group to invoke the administrative remedy of applying to the Price Commission to "review and limit" the rate increases of the natural gas companies certified by the FPC
 The doctrine of exhaustion of administrative remedies was held to require dismissal of complaints seeking relief against increases in intrastate rates of the New York Telephone Co., which had been approved by the New York State Public Service Commission, and were under active review by the Price Commission when the complaints were filed in the District Court. City of New York v. New York Telephone Co., 468 F.2d 1401 (Temp.Em.Ct.App. June 30, 1972).
 Nor do we have occasion to consider the Price Commission's 1972 revision of its regulations, which include, inter alia, provisions as to criteria for rate increases; public utility certifications required of regulatory agencies approving rate increases; Price Commission approval of rules and procedures of regulatory agencies. See 6 C.F.R. 300.16, 300.16a (June 1972).