Arthur NEWELL et al., Plaintiffs,

v.

FEDERAL ENERGY ADMINISTRA-
TION et al., Defendants.

Civ. A. No. 77–0699.

United States District Court,
District of Columbia.

Dec. 12, 1977.

Robert M. Tobias, William F. White, Washington, D. C., for plaintiffs.

Earl J. Silbert, U. S. Atty., Robert N. Ford, Michael I. Gewirtz, Asst. U. S. Attys., Andrew Jay Schwartzman, Washington, D. C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court on plaintiff's[1] motion for summary judgment and defendants' cross-motion for summary judgment or, in the alternative, to dismiss. The Court finds, and all parties agree, that there are no genuine issues of material fact remaining in the case. For the reasons hereinafter stated, the Court, in this case of

---

1. Although this case was brought as a class action, no motion for certification has been filed. Therefore, the Court will treat this summary judgment motion as an individual action.

See Lagorio v. Board of Trade of City of Chicago, 529 F.2d 1290, 1291 (7th Cir.), cert. denied, 426 U.S. 950, 96 S.Ct. 3171, 49 L.Ed.2d 1187 (1976).

first impression,[2] finds that the plaintiff is entitled to a judgment as a matter of law.

## I. BACKGROUND

In August 1975, the plaintiff transferred his employment from the Department of the Army to the defendant, Federal Energy Administration (FEA). The plaintiff served there as the Deputy for Operations in the Office of Congressional Affairs. Subsequently, this office was specifically ordered to reduce its staff substantially to meet a congressional mandate. Pursuant to this requirement, the defendant sent plaintiff a letter stating that his position was to be abolished and that arrangements were being made to exercise his reemployment rights[3] and to transfer him back to the Army. The letter stated that because the plaintiff had reemployment rights, the reduction-in-force regulations and the adverse action procedures[4] were not applicable. Plaintiff then left his position at the FEA and was returned to the Department of the Army, where he is currently employed.

## II. DISCUSSION

Plaintiff claims that the defendants have exceeded their authority by transferring the plaintiff in a manner which circumvents the procedural protections (the reduction-in-force regulations, etc.) to which the plaintiff is entitled. The defendants claim that pursuant to both § 28 of the Federal Energy Administration (FEA) Act, 15 U.S.C. § 786, and § 212(g)(1) of the Economic Stabilization Act (ESA) of 1970, as amended, 12 U.S.C. § 1904 note,[5] they have the authority to exercise unilaterally the plaintiff's reemployment rights. Section 28 of the FEA reads:

> Upon the termination of this chapter, any functions or personnel transferred by this chapter shall revert to the department, agency, or office from which they were transferred. Any officer or employee of the Federal Government who is appointed, without break in service of one or more workdays, to any position for carrying out functions under this chapter is entitled, upon separation from such position other than for cause, to reemployment in the position occupied at the time of appointment, or in a position of comparable grade and salary.

Section 212(g)(1) of the ESA reads:

> Under such regulations as the President may prescribe, officers and employees of the Government who are appointed, without a break of service of one or more workdays, to any position for carrying out functions under this title are entitled, upon separation from such position, to reemployment in the position occupied at the time of appointment or in a position of comparable grade and salary.

Plaintiff argues that the defendants cannot rely upon either of these statutes because: (1) § 28 of the FEA Act is only activated by the termination of the FEA, not the termination of an employee's job; (2) reemployment rights under § 28 can be exercised only by the employee, not by the FEA; and (3) § 212(g)(1) of the ESA does not apply to the plaintiff because the procedures of that provision have not been followed. The Court finds that the termination of the FEA is not the only incident that will activate § 28, but that the reemployment rights

**2.** The only other court to address any of the issues in this case did so on a motion for a temporary restraining order. The case, *Taylor v. Zarb,* 75–c 4099 (N.D.Ill., December 29, 1975) was ultimately settled.

**3.** Reemployment rights entitle the employee to be reemployed by his former agency.

**4.** 5 C.F.R. Part 351 provides a reduction-in-force procedure for agencies that are over-staffed for various reasons. 5 C.F.R. Part 752 is the adverse action procedure, providing federal employees with an opportunity to be heard when they are terminated or reduced in grade or pay. These procedures allow an employee to know the reasons for his or her removal and to seek review at a higher level.

**5.** This provision has been incorporated into the Emergency Petroleum Allocation Act, (EPAA) 15 U.S.C. §§ 751 *et seq.,* by § 5(a)(1)(B) of that Act. 15 U.S.C. § 754(a)(1)(B). Therefore, § 212(g)(1) of the ESA would seem to apply to anyone performing functions under the EPAA, including the plaintiff.

provided by § 28 of the FEA Act and by § 212(g)(1) of the ESA, as they apply to plaintiff herein, can be exercised only at the request of the employee.

A. *Section 28 is Activated by Both the Termination of FEA's Operation and an Employee's Separation from the FEA, Other Than for Cause.*

Plaintiff contends that the reemployment rights of § 28 arise only "upon the termination of [the FEA]." The Court finds that basic principles of statutory construction require rejection of this contention. It is well-established that resort to legislative history is inappropriate when the statute is clear on its face. *See, e. g., Ex parte Collett,* 337 U.S. 55, 61, 69 S.Ct. 944, 93 L.Ed. 1207 (1949); *Aviation Consumer Action Project v. Washburn,* 175 U.S.App. D.C. 273, 278, 535 F.2d 101, 106 (1976). Moreover, a basic maxim of statutory construction is that every word, clause, and sentence of a statute should, if possible, be given effect. *See United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955); *Montgomery Charter Service, Inc. v. Washington Metropolitan Area Transit Commission,* 112 U.S.App.D.C. 321, 325, 325 F.2d 230, 234 (1963); *Equal Employment Opportunity Commission v. Continental Oil Co.,* 548 F.2d 884, 889 (10th Cir. 1977). In light of these principles, the Court has examined § 28 and concludes that its language is clear on its face and that the plaintiff's interpretation would render ineffective and meaningless various parts of the statute.

Section 28 consists of two sentences. The rights conferred by the first sentence are activated "upon the termination of [the FEA]." However, the rights conferred by the second sentence are not limited in this manner. There, rights are activated "upon separation from such position other than for cause." If Congress had intended both sentences to be triggered only by the termination of the FEA, it could easily have either deleted the "upon separation from" clause or simply repeated the "upon termination of [the FEA]" clause. In fact, and more significantly, Congress' exclusion of separation for cause from the ambit of the. second sentence would have been *wholly unnecessary* if Congress had intended the second sentence to be activated only by the termination of the FEA. In other words, had Congress intended the termination of the FEA to be the only activating incident, separation for cause would have been automatically excluded and there would have been no reason to expressly exclude it. Therefore, the language of § 28 clearly indicates that separation, other than for cause, will activate the reemployment rights of the second sentence.

There is further evidence in the statute that Congress intended the two sentences to refer to different reemployment rights. The statute distinguishes between functions and employees "transferred by this Act" (first sentence) and employees "appointed to any position . . ." (second sentence). The term used in the first sentence complements § 6 of the Act[6] which *transferred* to the FEA specific functions and personnel of the Department of the Interior and the Cost of Living Council. The second sentence only refers to employees who were

---

**6.** 15 U.S.C. § 765.

Transfer of Functions

(a) There are hereby transferred to and vested in the Administrator all functions of the Secretary of the Interior, the Department of the Interior, and officers and components of that Department—

 (1) as relate to or are utilized by the Office of Petroleum Allocation;

 (2) as relate to or are utilized by the Office of Energy Conservation;

 (3) as relate to or are utilized by the Office of Energy Data and Analysis; and

 (4) as relate to or are utilized by the Office of Oil and Gas.

(b) There are hereby transferred to and vested in the Administrator all functions of the Chairman of the Cost of Living Council, the Executive Director of the Cost of Living Council, and the Cost of Living Council, and officers and components thereof, as relate to or are utilized by the Energy Division of the Cost of Living Council.

not "transferred by the Åct" but voluntarily chose to go to the FEA.[7] This difference is clear from the language in the statute. The first sentence speaks of reversion to the "department, agency, or office from which they [functions and employees] were transferred." The second sentence speaks of reversion to the "position occupied at the time of appointment." This is logical because, pursuant to § 6, employees transferred by the Act are transferred with their positions. Therefore, only employees not transferred by the Act could revert to their "position"; for those transferred by the Act, their "position" is in the FEA and they can only revert to their "department, agency, or office." In addition, the first sentence refers to functions, while the second sentence does not. This is consistent with this Court's interpretation of § 28 in that functions can only revert "upon the termination of [the FEA]," while employees may revert to their original positions "upon separation."

 Accordingly, the application of basic rules of statutory construction convince the Court that § 28 creates two distinct sets of reemployment rights.[8] Because plaintiff was "appointed" rather than "transferred" to the FEA, his reemployment rights may be exercised prior to the termination of the FEA, pursuant to the second sentence of § 28.

---

7. Plaintiff, having voluntarily chosen to go to the FEA, is therefore covered by the second sentence of § 28.

8. Plaintiff has suggested that interpreting § 28 so as to create two distinct sets of reemployment rights—one for those employees transferred by the Act and one for those appointed—would be unconstitutional as violative of the Due Process clause of the fifth amendment. The Court rejects this conclusion because there is a clear rational basis for the distinction made by Congress. *See Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). Allowing reemployment rights to be exercised prior to the termination of the FEA serves as an incentive for government employees to volunteer to go to the FEA. This incentive is not needed for employees transferred by the Act because they apparently have no choice.

## B. Reemployment Rights Under § 28 May Be Exercised Only at the Request of the Employee.

Plaintiff argues that § 28 gives employees—and not the FEA—the right to exercise the reemployment rights and that the defendants have used § 28 as a "destaffing tool" to remove employees without giving them the opportunity to compete with other employees in a reduction-in-force procedure. The defendants claim that the Civil Service Commission has promulgated regulations[9] under § 212(g)(1) of the ESA which allow an emergency agency to return employees to their former agencies without giving them any of the procedural protections they might otherwise have. Although, as defendants admit, these regulations do *not* apply to the FEA, defendants argue that the regulations should control this Court's decision because the language of § 28 of the FEA Act is similar to the language of § 212(g)(1) of the ESA. The Court finds this approach inconsistent with § 212(g)(1) itself and with subsequent legislation and, therefore, the Court rejects it.

 First, § 212(g)(1) differs from § 28 in that reemployment rights under the former are to be governed by "such regulations as the President may prescribe." 12 U.S.C. § 1904 note. Pursuant to this provision, the Civil Service Commission, through a series of delegations from the President,[10] acquired authority to allow an agency performing functions under the ESA to exer-

---

9. *See* 5 C.F.R. Part 352, Subpart F.

10. Section 2(a) of Executive Order 11695 (January 12, 1973) delegated "all the powers and duties conferred upon the President by the Economic Stabilization Act of 1970" to the Chairman of the Cost of Living Council. 38 F.R. 1973 (January 12, 1973). Cost of Living Council Order No. 14 delegated to the Director of the Cost of Living Council all the authority delegated to the Chairman of the Cost of Living Council by Executive Order 11695. 39 F.R. 1489 (January 12, 1973). Cost of Living Council Order No. 18 then delegated to the CSC the authority to issue and administer the regulations governing reemployment rights under § 212(g) of the ESA. 38 F.R. 2348 (January 24, 1973). These regulations are now embodied in 5 C.F.R. Part 352, Subpart F.

cise the employee's reemployment rights. Thus, it was necessary for regulations to be promulgated in order for an agency to exercise unilaterally its employees' reemployment rights under § 212(g)(1); that is, the terms of § 212(g)(1) do *not* themselves confer such power on the agency. Therefore, the language of § 28—absent any other promulgations thereunder [11]—does not confer power upon the agency to exercise the reemployment rights of its employees.

■ Second, the recently enacted Department of Energy (DOE) Organization Act is evidence that only an employee can exercise reemployment rights. A basic principle of statutory construction is that subsequent legislation may be strong evidence of what the legislature intended by an earlier statute.[12] *See NLRB v. Bell Aerospace Co. Div. of Textron, Inc.,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 1969); *Mobil Oil Corp. v. Federal Energy Administration,* 566 F.2d 87 (Em.App., filed November 23, 1977); *Mount Sinai Hospital, Inc. v. Weinberger,* 517 F.2d 329 (5th Cir.), *modified and rehearing denied,* 5 Cir., 522 F.2d 179 (1975), *cert. de-*

*nied,* 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976); 2A *Sutherland Statutory Construction,* § 49.11 (Sands ed. 1973). Section 702(c) of the DOE Organization Act states:

Employees transferred to the Department holding reemployment rights acquired under section 28 of the Federal Energy Administration Act of 1974 or any other provision of law or regulation may exercise such rights only within one hundred twenty days from the effective date of this Act or within two years of acquiring such rights, whichever is later. *Reemployment rights may only be exercised at the request of the employee.*

(Emphasis added.) Thus, Congress has spoken directly and unequivocally to the issue of whether an agency may exercise reemployment rights without the employee's consent.

Third, although § 702(c) technically only refers to reemployment rights held while in the Department of Energy, the legislative history of the provision indicates the policy underlying its enactment and the policy Congress intended to enact in § 28 of the FEA Act. In the House debates on the new Act, Congresswoman Spellman [13] intro-

---

**11.** Of course, such promulgations would not be possible under § 28 because, unlike § 212(g)(1), § 28 does not contain any delegation to the President to prescribe regulations under which reemployment rights may be exercised.

**12.** The Court does not believe that the Supreme Court's decision in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) overrules this principle *in this particular case.* There, the Court said:

The views of members of a later Congress [i. e., legislative history] concerning *different* sections of Title VII, enacted after this litigation was commenced, are entitled to little if any weight. It is the intent of the Congress that enacted § 703(h) in 1964, *unmistakable* in this case, that controls.

*Id.,* 97 S.Ct. at 1864 n.39 (emphasis added).

In this case, the Court is relying not upon a "few broad references" in the legislative history as in *Teamsters,* but, rather, upon the legislation enacted *and* the legislative history. Unlike in *Teamsters,* the legislative history in this case speaks directly to the issue before this Court. Furthermore, this case does not involve the views of members of Congress concerning "different" sections of a statute as in *Team-*

sters but, instead, involves the views of the same exact provision. In addition, while Congress' intent when it first enacted § 703(h) of Title VII was "unmistakable," Congress' intent when it enacted § 28 of the FEA Act was indiscernible. Therefore, the Court finds it proper to rely upon subsequent legislation in this case.

**13.** 123 Cong.Rec. H5387 (daily ed., June 3, 1977) (remarks of Rep. Spellman). Congresswoman Spellman was the chairperson of the Compensation and Employee Benefits subcommittee of the Post Office and Civil Service Committee of the House, one of the committees that prepared the House Report, No. 346 (Part II), 95th Cong., 1st Sess., (1977). A basic rule of statutory interpretation states that the statements of a sponsor of an amendment are "pregnant with significance." *National Woodwork Mfrs. Association v. NLRB,* 386 U.S. 612, 640, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967), *quoting NLRB v. Fruit & Vegetable Packers,* 377 U.S. 58, 66, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964). *See* 2A *Sutherland Statutory Construction* § 48.15 (Sands ed. 1973). Therefore, as a sponsor of the amendment and as a member of the committee that prepared the House Report, her views will be given much significance. Fur-

duced an amendment which was ultimately enacted into law. The amendment added a sentence: "Reemployment rights may only be exercised at the request of the employee." Rep. Spellman's discussion of the policy behind this amendment is relevant to the issue now before this Court.

The second part of my amendment corrects a problem that has cropped up in the Federal Energy Administration resulting from the exercise of reemployment rights. It appears that management has used this right to circumvent reduction in force and adverse action protections of the employee, simply by sending the employee back to the old agency. The employee has no appeal to this process. If the employee's position is being eliminated, or if the employee's performance and/or attitude are lacking, RIF and adverse action procedures exist for management to use, and under which the employee's rights are protected.

*Reemployment rights were intended as a protection against interruption [sic] in the careers of Federal Employees, and as an inducement for employees to take a chance and accept a position in a new agency.* Management has turned this shield into a sword to be used against the employees and to circumvent their procedural protections. The result has been widespread distrust and low morale among the employees.

In order to prevent such abuses from occurring in the new Department, it is imperative that this legislation clearly specify that reemployment rights may only be exercised by the employee, if he or she chooses to return to the parent agency. My amendment does not shield poor employees, or employees whose positions are no longer needed—procedures

exist for those instances. It simply insures that those procedures are used and that the exercise of reemployment rights are not forced on an employee by management.

(Emphasis added.)

■ Accordingly, the Court is convinced that reemployment rights under § 28 of the FEA Act may be exercised only at the request of the employee. Therefore, the defendants are precluded from relying upon § 28 as authority for unilaterally exercising the reemployment rights of its employees.

C. *Section 212(g)(1) of the ESA, as Incorporated into the EPAA by § 5(a)(1), Does Not Authorize the FEA to Exercise Unilaterally the Reemployment Rights of its Employees.*

■ Defendants argue that § 212(g)(1) of the ESA was incorporated into the EPAA by § 5(a)(1) of the EPAA and that, because the plaintiff does perform functions under the EPAA, § 212(g)(1) provides the defendants with an independent basis for unilaterally exercising plaintiff's reemployment rights. The plaintiff contends that § 28 of the FEA Act is the exclusive provision conferring reemployment rights on the plaintiff and that, even if § 212(g)(1) did apply to plaintiff, the defendants' exercise of the plaintiff's reemployment rights was procedurally defective. The Court will assume, without deciding, that the plaintiff has reemployment rights under § 212(g)(1); however, the Court finds that this provision, *as it applies to this plaintiff,* does not authorize a unilateral exercise of the plaintiff's reemployment rights.

Section 212(g)(1) of the ESA states:
*Under such regulations as the President may prescribe,* officers and employees of

---

thermore, although her views of what Congress had intended in § 28 of the FEA Act are apparently not based on her participation in the committees that drafted that legislation, it is noteworthy that two members of the House who expressly approved of Rep. Spellman's amendment were both members of the committee that helped draft § 28. 123 Cong.Rec. H5388 (daily ed., June 3, 1977) (remarks by Reps. Horton and Brooks). In fact, Rep. Hor-

ton had participated in the Conference Committee that prepared § 28, while both Rep. Horton and Rep. Brooks participated in the Conference Committee that prepared § 702(c). All of this strongly suggests that Rep. Spellman's statements of the intent of § 28 were scrutinized and expressly approved by persons who had actually drafted § 28, and, therefore, are entitled to great weight.

the Government who are appointed, without a break of service of one or more workdays, to any position for carrying out functions under this title are entitled, upon separation from such position, to reemployment in the position occupied at the time of appointment or in a position of comparable grade and salary.

(Emphasis added.) Pursuant to the first phrase of this provision, the President delegated this authority to prescribe implementing regulations. Through a series of delegations, the Civil Service Commission promulgated regulations which allow an agency to exercise unilaterally the reemployment rights of its employees.[14] However, as defendants admit,[15] these regulations do *not* apply to the FEA. In fact, no regulations have ever been promulgated under § 212(g)(1) which apply to the FEA.[16] Therefore, this Court finds that because, as previously noted,[17] § 212(g)(1) does not by itself confer such authority, there is no authority under § 212(g)(1) for the FEA to exercise unilaterally the plaintiff's reemployment rights.

■ Even though the regulations under § 212(g)(1) do not technically apply to the plaintiff, the defendants assert three arguments in support of their position that these regulations should be applied to FEA employees. First, the defendants have argued that because § 212(g)(1) states that the President "may" prescribe regulations, reemployment rights may be exercised without the need for implementing regulations. While the term "may" does not nec-

essarily compel the President to prescribe regulations, it is clear from the prior history of § 212(g)(1) of the ESA that the implementation of regulations is *essential* to any authority an agency may have to exercise unilaterally reemployment rights. Therefore, the failure of the President to prescribe such regulations precludes the FEA from exercising the reemployment rights of its employees.

■ Second, the defendants have argued that Executive Order 11790 authorizes their action in transferring the plaintiff. Section 9 of that Order reads:

Nothing in the Order shall be deemed to affect rights to reemployment under the provisions of section 5(a)(1)(B) of the Emergency Petroleum Allocation Act of 1973, or section 212(g) of the Economic Stabilization Act of 1970, as amended.

This section, however, is a mere savings clause in that it indicates the President's intent to retain his right to promulgate regulations pursuant to § 212(g)(1) of the ESA, for FEA employees. This Order does *not* constitute an exercise of the President's power to promulgate such regulations. Therefore, although the Order does suggest that § 212(g)(1) of the ESA may apply to FEA employees, the Order does not compensate for the fact that the President has not yet promulgated regulations allowing the FEA to exercise unilaterally the reemployment rights of its employees.

■ Third, the defendant argues that its transfer of the plaintiff was authorized in that Congress, by incorporating

---

14. *See* note 8, *supra.*

15. *See* Defendants' Cross-Motion for Summary Judgment or, in the Alternative, to Dismiss, at 19–20 (June 24, 1977).

16. That § 5(a)(1) of the EPAA merely *allows* regulations to be prescribed for the EPAA, rather than incorporating the regulations that have been promulgated under § 212(g)(1) is clear from the legislative history of § 5(a)(1). The House Report, whose version of this provision was adopted by the Conference Report and ultimately enacted into law, states:

In incorporating these provisions of the Economic Stabilization Act of 1970, as amended, the Committee intends to allow for the same administrative process and judicial

review provided for regulations and orders issued under that Act. In relevant part, these sections make the provision of 553 of Title 5 of the United States Code (which encompass the informal rulemaking procedures of the Administrative Procedure Act) applicable to regulations and orders issued by the President under the authority of this bill.

H.R.Rep.No.531, 93d Cong., 1st Sess. (1973), U.S.Code Cong. & Admin.News 1973, pp. 2582, 2598. Therefore, § 5(a)(1) incorporates merely § 212(g)(1) and the procedures thereunder— not the regulations promulgated thereunder.

17. *See* II B, *supra.*

§ 212(g)(1) of the ESA into § 5(a)(1) of the EPAA, "extended authority to the FEA under an existing statute [§ 212(g)(1)] which it must be presumed to have known had been interpreted by CSC [Civil Service Commission] to allow for exercise of reemployment rights by the temporary agency at its initiative." Defendants' Cross-Motion for Summary Judgment, or, in the Alternative, to Dismiss, at 20 (June 24, 1977). The Court finds this presumption unpersuasive in this case. According to this Circuit's decision in *Plasterers Local Union No. 79, Operative Plasterers' and Cement Masons' International Assoc., AFL–CIO v. NLRB*, 142 U.S.App.D.C. 146, 157, 440 F.2d 174, 185 (1970), *rev'd on other grounds*, 404 U.S. 116, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971):

> Reenactment of a section of law does not of itself constitute conclusive legislative approval of either decisions or administrative regulations construing the provision, in the absence of a showing that the attention of Congress was specifically directed to the matter at hand. That is the teaching of *Helvering v. Hallock,* 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604 (1940), and *Girouard v. United States,* 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084 (1946), decisions whose vitality is underscored by the very recent opinion in *Boys Markets, Inc. v. Retail Clerk's Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

*See March v. United States,* 165 U.S.App. D.C. 267, 276, n. 37, 506 F.2d 1306, 1315 n. 37 (1974). Because the FEA has not shown that the attention of Congress, when it enacted § 5(a)(1) of the EPAA, was "specifically directed" to the regulations promulgated under § 212(g)(1) of the ESA, the presumption that Congress intended to reenact these regulations under § 5(a)(1) of the EPAA must be rejected.

Furthermore, and more importantly, this presumption has been expressly rejected by Congress in its enactment of § 702(c) of the DOE Organization Act. This provision and its legislative history [18] clearly indicate that reemployment rights acquired under § 28 of the FEA Act or "any other provision of law

or regulation" may "only be exercised at the request of the employee." Congress has thus expressly responded with severe censure to the past interpretation and administration of § 212(g)(1) of the ESA as it would apply to FEA employees. *Cf. March v. United States,* 165 U.S.App.D.C.. 267, 277, 506 F.2d 1306, 1316 (1974); *Cy Ellis Raw Bar v. District of Columbia Redevelopment Land Agency,* 139 U.S.App.D.C. 385, 390, 433 F.2d 543, 548 (1970). Therefore, the defendants cannot rely upon the presumption that Congress intended the regulations promulgated under the ESA to apply to FEA employees performing functions under the EPAA.

### III. CONCLUSION

The Court, upon careful consideration of the language and legislative history of the statutes involved, finds that the plaintiff is entitled to a judgment as a matter of law in that the defendants lack the authority to exercise unilaterally the reemployment rights of the employees of the FEA. However, because the issue of relief has not been briefed by the parties, the Court will refrain from deciding this matter until the parties submit memoranda on the relief appropriate in this case.

An Order in accordance with the foregoing will be issued of even date herewith.

### ORDER

Upon consideration of the plaintiff's motion for summary judgment, the defendants' cross-motion for summary judgment, all responses filed thereto, and the oral arguments thereon, it is, by the Court, this 12th day of December, 1977,

ORDERED, that plaintiff's motion for summary judgment be, and the same hereby is, granted; and it is

FURTHER ORDERED, that defendants' cross-motion for summary judgment be, and the same hereby is, denied; and it is

FURTHER ORDERED, that both parties submit memoranda, within five (5) days of

---

18. *Id.*

the date of this Order, on the issue of the relief appropriate in this case; such memoranda should specifically deal with:

(1) whether reinstatement to the position the plaintiff occupied at the time of his transfer would be appropriate;

(2) whether the grant of back pay is possible in light of the sovereign immunity issue;

(3) whether an injunction is necessary in light of § 702(c) of the Department of Energy Organization Act; and

(4) what effect the creation of the new Department of Energy, as a successor to the Federal Energy Administration, may have on the relief to be given to the plaintiff.