Arthur NEWELL, Plaintiff-Appellee,

v.

FEDERAL ENERGY ADMINISTRA-
TION et al., Defendants-Appellants.

No. DC–47.

Temporary Emergency Court of Appeals.

Argued Oct. 5, 1978.

Decided Jan. 9, 1979.

Linda Jan S. Pack, Dept. of Justice, Washington, D. C., with whom William Kanter and Barbara Allen Babcock, Asst. Attys. Gen., Earl J. Silbert, U. S. Atty., Robert N. Ford and Michael I. Gewirtz, Asst. U. S. Attys., Washington, D. C., were on brief, for defendants-appellants.

William F. White, National Treasury Employees Union, Washington, D. C., with whom Robert M. Tobias, Washington, D. C., was on brief, for plaintiff-appellee.

Before TAMM, GRANT, and BECKER, Judges.

GRANT, Judge:

Plaintiff-Appellant Arthur Newell (Plaintiff) was employed in the Department of the Army as a Grade GS–15 when, in August 1974, he transferred to a position as the Deputy of Operations in the Office of Congressional Affairs with the newly created Federal Energy Administration (FEA) which then had an authorized lifespan of two years. In June and August 1976, Congress extended the duration of the FEA Act of 1974[1] but, as a part of that extension, Congress determined that certain functions within the agency should be phased out. In particular, the Office of Congressional Affairs was ordered to reduce its staff. Pursuant to that mandate, the director of that office advised plaintiff that his position was being officially abolished and that arrangements were being made for the agency to exercise his re-employment rights and to send him back to the Department of the Army. Plaintiff returned to the Department of the Army, again as a GS–15 employee, without any break in service. Thereafter plaintiff filed this action in the District Court for the District of Columbia, alleging that re-employment rights were not applicable at the

---

1. 15 U.S.C. § 761, *et seq.*

time of his transfer out of the FEA and that, even if such rights were available, he contended that the FEA was not authorized to exercise them unilaterally. Specifically, he contended that, by thus exceeding its authority, the agency had circumvented his procedural protections, including the reduction-in-force regulations and the hearing to which that would have entitled him.[2] He requested that he be reinstated to his former position with the Department of Energy, the successor of the FEA. The district court granted plaintiff's motion for summary judgment and ordered that he be reinstated at his former or equivalent position with the Department of Energy, from which judgment and order the FEA instituted this appeal.[3] We reverse.

## RE–EMPLOYMENT RIGHTS CREATED BY THE ECONOMIC STABILIZATION ACT OF 1970

The Economic Stabilization Act of 1970 (ESA), Section 212(g)(1), as amended, provided:

Under such regulations as the President may prescribe, officers and employees of the Government who are appointed, without a break of service of one or more work days, to any position for carrying out functions under this title are entitled, upon separation from such position, to reemployment in the position occupied at the time of appointment or in a position of comparable grade and salary.

Re-employment rights have been provided by the Congress to assist the government in effective response to emergencies. These provisions serve to provide an incentive to a federal employee to accept a temporary assignment to these temporary or emergency-type agencies by assuring him protection in his position and his seniority with one federal agency during his temporary absence from that agency to work for another. These provisions also serve to enhance the government's management flexibility by permitting prompt response to changing personnel needs. To underscore the flexibility which this provided the government as employer, the Civil Service Commission (CSC) at the time of the enactment of the 1971 amendments to the ESA, adopted an interpretation of re-employment rights which allowed for dual exercise thereof by either the employee or the employing agency. That letter, Federal Personnel Manual (FPM) Letter 352–4, issued December 17, 1971, emphasized this point:

[A]n emergency agency hiring an employee by transfer with reemployment rights typically contemplates a strictly temporary arrangement, very much in the nature of an interagency "loan". Up to now, the regulations have not reflected such a relationship, and there has been no easy way for the emergency agency to return the employee to his former agency on its own initiative. The regulatory change, which is patterned after the regulations governing the terminations of a temporary promotion, is designated to give the emergency agency greater flexibility in arranging a return while protect-

2. 5 C.F.R. Part 351 provides a reduction-in-force procedure for agencies that are overstaffed for various reasons. 5 C.F.R. Part 752 is the adverse action procedure, providing federal employees with an opportunity to be heard when they are terminated or reduced in grade or pay. These procedures allow an employee to know the reasons for his or her removal and to seek review at a higher level. However, the Civil Service Commission regulations promulgated under the delegated ESA authority (5 C.F.R. 352.605(a)) provided that "an employee granted re-employment rights under this subpart may be returned to his former agency without regard to Parts 351, 752 . . . of this Chapter."

3. Upon enactment of the Federal Energy Administration Act of 1974, P.L. No. 93–275, 88 Stat. 96 (May 7, 1974), implemented by Executive Order 11790, the Federal Energy Office was abolished, and all authority delegated to the President by the Emergency Petroleum Allocation Act was vested in the newly established Federal Energy Administration. Upon enactment of the Department of Energy Organization Act, P.L. 95–91, August 4, 1977, Executive Order No. 12009, 42 F.R. 46267 (September 15, 1977), the Department of Energy assumed the responsibility for enforcing the pricing and allocation authority. Since FEA was the responsible agency at the time relevant to this case, appellee will be referred to as "FEA" throughout this Opinion.

ing the equities of the employee concerned.

This CSC interpretation of Section 212(g)(1), *supra,* was employed in Cost of Living Council[4] personnel matters, which had been delegated to CSC. The Federal Energy Office (FEO), and later, the Federal Energy Administration (FEA), followed the established CSC interpretation and adopted a dual exercise policy. In FPM Letter 352-6, the CSC set forth its concurrence in the FEA policy and stated that:

> These reemployment rights are not conditional on the termination of FEA but may be exercised at any time he is separated—voluntarily or involuntarily—from his position in FEA. Nor are these reemployment rights conditional upon the issuance of regulations by FEO, FEA, or the Commission.

This concurrence, by the Civil Service Commission, with FEO and FEA interpretation of the "dual exercise" of re-employment rights, was announced and disseminated by the CSC through the official Federal Personnel Manual (FPM).

In November 1973, the Congress passed P.L. 93–159, the Emergency Petroleum Allocation Act (EPAA), 15 U.S.C. § 751 *et seq.*[5] Section 5(a)(1)(B) provides, at 15 U.S.C. § 754(a)(1)(B):

> Section 212 (other than 212(b)) and 213 of such Act [the Economic Stabilization Act of 1970, as amended] shall apply to functions under this Act to the same extent such sections apply to functions under the Economic Stabilization Act of 1970.

The EPAA thus incorporated by reference the reemployment rights provisions of the ESA. Responsibility for the administration of these provisions under the EPAA was not delegated to the Civil Service Commission, as had been done under the ESA.[6] Rather, the responsibility was given to the FEO and later to the FEA,[7] where this plaintiff had gone on assignment from his regular job at the Department of the Army.

The FEO was created by Executive Order 11748 (December 4, 1973) 38 C.F.R. 33575. Section 3(a) of that Order delegated to the Administrator of the FEO all of the authority vested in the President by the EPAA. This authority included, of necessity, the administration of the re-employment rights above cited. *This authority was not further delegated,* but remained with this agency. It need be stressed at this point that this authority, emanating from the Emergency Petroleum Allocation Act and so delegated to the FEO, was separate from and was independent of the delegated ESA authority which earlier had been exercised by the Civil Service Commission.[8]

## RE–EMPLOYMENT RIGHTS CREATED UNDER THE FEDERAL ENERGY ADMINISTRATION ACT OF 1974 AND THE DEPARTMENT OF ENERGY ORGANIZATION ACT

On June 27, 1974, the FEA was created under the Federal Energy Administration Act of 1974. Executive Order 11790 was

---

4. Section 2(a) of Executive Order 11695, (January 12, 1973), delegated "all the powers and duties conferred upon the President by the Economic Stabilization Act of 1970" to the chairman of the Cost of Living Council. 38 F.R. 1473 (January 12, 1973). Cost of Living Council Order No. 14 delegated to the director of the Cost of Living Council all the authority delegated to the chairman of the Cost of Living Council by Executive Order 11695. 39 F.R. 1489 (January 12, 1973). Cost of Living Council Order No. 18 then delegated to the CSC the authority to issue and administer the regulations governing re-employment rights under Section 212(g) of the ESA. 38 F.R. 2348 (January 24, 1973). These regulations are now embodied in 5 C.F.R. Part 352, Subpart F.

5. Successive enactments have extended the EPAA until September 30, 1981. 15 U.S.C. § 760g.

6. See Footnote 4, *supra.*

7. The district court in this case so found: "This provision has been incorporated into the Emergency Petroleum Allocation Act, (EPAA) 15 U.S.C. §§ 751 *et seq.*, by § 5(a)(1)(B) of that Act. 15 U.S.C. § 754(a)(1)(B). Therefore, § 212(g)(1) of the ESA would seem to apply to anyone performing functions under the EPAA, including the plaintiff." (Emphasis supplied.) Footnote 5. 445 F.Supp. 80 at 82.

8. See Footnote 10(c) *post.*

thereupon issued to carry out the purposes and functions provided for in that Act. This Order revoked Executive Order 11748 (the FEO Order, *supra* ), but Section 2(a) of Executive Order 11790 delegated to the Administrator of the FEA "all authority vested in the President by the EPAA of 1973," 39 F.R. 23185. Section 9 of that Executive Order 11790 specifically provided:

Nothing in the order shall be deemed to affect rights of reemployment under the provisions of section 5(a)(1)(B) of the Emergency Petroleum Allocation Act of 1973, or section 212(g) of the Economic Stabilization Act of 1970, as amended.

Thus, the FEA Administrator held exclusive jurisdiction over *re-employment rights created by the EPAA.* In addition to the EPAA re-employment rights provisions delegated to the FEA Administrator, Section 28 of the FEA Act created a new and separate re-employment right.[9] Section 28 of the FEA Act, 15 U.S.C. § 786 provides:

Upon the termination of this Act, any functions or personnel *transferred by this Act* shall revert to the department, agency, or office from which they were transferred. Any officer or employee of the Federal Government who is appointed, without break in service of one or more workdays, to any position for carrying out functions under this Act is entitled, upon separation from such position other than for cause, to reemployment in the position occupied at the time of appointment, or in a position of comparable grade and salary. [Emphasis supplied.]

It should be noted here that it was at this point in time when plaintiff, on March 28, 1977, was transferred back to the Department of the Army.

The Department of Energy Organization Act P.L. 95–91, 42 U.S.C. § 7101 *et seq.,* (DOE Act), was implemented on October 1, 1977, pursuant to Executive Order 12009, 43 F.R. 45267. Under the DOE Act all of the functions of the FEA were transferred to the new Department of Energy. Section 702(c) of the DOE Act in effect repealed Section 28 of the FEA Act and also Section 212(g)(1) of the ESA as incorporated into the EPAA, *effective 120 days after implementation of the DOE Act* and, further, expressly limited to employees of the newly created department the privilege to exercise those FEA re-employment rights:

(c) Employees transferred to the Department holding reemployment rights acquired under Section 28 of the Federal Energy Administration Act of 1974 or any other provisions of law or regulation may exercise such rights only within one hundred twenty days from the effective date of this Act or within two years of acquiring such rights, whichever is later. Reemployment rights may only be exercised at the request of the employee.

## THE POSITION OF THE PARTIES

Relying solely upon the provisions of Section 28 of the FEA Act, *supra,* plaintiff contended that the re-employment rights of Section 28 arise only "upon the termination of [the FEA]". He contended, further, that when such re-employment rights were available in his case, they could be exercised only at his option. Based upon these contentions, plaintiff filed his motion for summary judgment.

The FEA relied on two independent statutory provisions [10] and contended that each

---

**9.** See Footnote 10(c) *post.*

**10.** (a) Section 212(g)(1) of the ESA of 1970, as incorporated by Section 5(a)(1)(B) of the EPAA, *supra,* 15 U.S.C. 754(a)(1)(B); *and* Section 28 of the FEA Act of 1974, 15 U.S.C. 786.

(b) The reliance on Section 212(g)(1) of the ESA, *supra,* was supported by an affidavit of Paul Cyr, (attachment A to FEA's alternate motion for summary judgment or to dismiss), explaining the functions under the EPAA which plaintiff performed, and which entitled him to

ESA–EPAA reemployment rights. These facts were not disputed by the plaintiff.

(c) FEA Letter 352–6 dated Nov. 18, 1975, on "Re-employment Rights" (attachments I and II to plaintiff's Statement of Facts as to which There Is No Genuine Issue) explained the derivation of EPAA rights and of FEA rights, and further pointed out: "8. It should be noted that FEA employees may have re-employment rights under either the Allocation Act, the FEA Act, or *both.*" (Emphasis supplied.)

of these statutes conferred re-employment rights which could be exercised at the option of either the plaintiff-employee or the employing agency. Based thereupon, the FEA filed a cross-motion for summary judgment or, in the alternative, to dismiss. At Page 82 of the district court opinion (445 F.Supp. 80) we read:

> The court finds that the termination of the FEA is not the only incident that will activate Sec. 28, but that the reemployment rights provided by Sec. 28 of the FEA Act and by Sec. 212(g)(1) of the ESA, as they apply to plaintiff herein, can be exercised only at the request of the employee.

Upon the basis of that finding, i. e., that "the re-employment rights provided by Section 28 of the FEA Act *and by Section 212(g)(1)* of the ESA, as they apply to plaintiff herein, *can be exercised only at the request of the employee*", the court found that the plaintiff was entitled to judgment as a matter of law and ordered that he be reinstated.

Thereupon, FEA filed its notice of appeal to this court under Section 211(b)(2) of the Economic Stabilization Act of 1970, as amended, and posed the question "whether the Federal Energy Administration had authority to exercise plaintiff's re-employment rights under Section 212(g)(1) of the ESA, as incorporated by reference in Section 5(a)(1) of the Emergency Petroleum Allocation Act of 1973, as amended, and under Section 28 of the Federal Energy Administration Act of 1974."

## JURISDICTION OF THIS EMERGENCY COURT OF APPEALS

FEA contends here that the issues addressed in this appeal relate exclusively to the re-employment rights created by the ESA and, further, that these issues, lying within the exclusive jurisdiction of this court, are severable from the re-employment rights in the FEA Act upon which plaintiff places his reliance. Therefore, the FEA subsequently filed a notice of appeal to the Court of Appeals for the District of Columbia, which has jurisdiction over the FEA Act issues. That court has now stayed those proceedings pending a final decision by this court on the ESA–EPAA issues. We make no comment on the FEA Act or the DOE Act issues.

Plaintiff challenges this court's jurisdiction over this appeal, pointing out (1) that plaintiff made no jurisdictional allegation that this cause of action arose under the ESA, as incorporated into the EPAA; (2) that no motion has been made to amend the pleadings pursuant to Rule 15(b) F.R.C.P.; and (3) that the district court expressly declined to ground its ruling upon the FEA's assertion that plaintiff had re-employment rights which were exercised under the EPAA.

FEA's cross-motion for summary judgment or to dismiss was, as above stated, based upon both statutory references, i. e., Section 212(g)(1) of the ESA *and* Section 28 of the FEA. Thereupon, plaintiff filed his 16-page opposition to defendant's motion for summary judgment or to dismiss, in which plaintiff sought to prove that Section 212(g)(1) of the ESA and Section 5(a)(1)(B) of the EPAA "has no applicability to plaintiff".

We find that plaintiff has misread the district court's findings.

The district court did not ground its decision on the question of the existence of EPAA rights, but upon the exercise thereof. The district court specifically found ". . . that the re-employment rights provided by Section 28 of the FEA Act and by Section 212(g)(1) of the ESA, as they apply to plaintiff herein, *can be exercised only at the request of the employee*". (Emphasis supplied.) 445 F.Supp. at 82. At a later point in the district court's Memorandum Opinion, the court stated as follows:

> The Court will assume, without deciding, that the plaintiff has reemployment rights under Sec. 212(g)(1); however, the Court finds that this provision, as it applies to this plaintiff, does not authorize a

unilateral exercise of the plaintiff's reemployment rights.

That is the precise issue presented here.

■ We find that the issue of the "applicability" of Section 212(g)(1) of the ESA and Section 5(a)(1)(B) of the EPAA was argued by the parties and that the district court made findings on such issue, and we hold that such issue is now properly presented here in this appeal.[11] We further hold that such issues are severable from the FEA issues. We believe that "a common sense accommodation of the two jurisdictional schemes" was announced by the Court of Appeals for the District of Columbia in *Connecticut Mutual Group v. Federal Power Commission.*[12]

## THE "APPLICABILITY" OF ESA–EPAA RE-EMPLOYMENT RIGHTS TO PLAINTIFF

Plaintiff has ESA–EPAA re-employment rights. He transferred to FEA "without a break of service . . . to [a] position for carrying out functions [13] under this title . . . ." [14] [incorporated by reference into the EPAA].[15]

■ As noted above, the district court assumed, for purposes of its decision, that such ESA–EPAA rights were available to the plaintiff but held that they had been erroneously exercised by the FEA, the agency-employer. Finding that Section 212(g)(1) did not, by its express terms, provide for the agency's unilateral exercise of re-employment rights, the court held that

the failure of the FEA to prescribe regulations thereunder "precludes the FEA from exercising the reemployment rights of its employees". In this respect, we believe the district court was in error.

Formal regulations are not a prerequisite to effectuation of Section 212(g)(1), *supra.* That section provides that "Under such regulations as the President *may* prescribe, officers and employees of the Government who are appointed . . . ." (Emphasis supplied.) He is not required to issue regulations. The language is clearly permissive, not mandatory. It should be noted here that the ESA, as originally enacted, conferred only discretionary, standby authority upon the President.[16] However, following the imposition of controls in August 1971, Congress enacted amendments to the ESA to strengthen the stabilization program and, to accomplish this, used very different language, viz: *"shall"* issue regulations for administrative procedures; [17] *"shall"*, to the maximum extent practical, conduct hearings,[18] etc. These and other portions of the 1971 amendments when read together with Section 212(g)(1) clearly demonstrate that the language of § 212(g)(1) was intended to enable the President to issue regulations, but did not require him to do so.

■ Much of the regulatory policy of the Civil Service Commission is set forth in the Federal Personnel Manual (FPM). It is not set forth in the Code of Federal Regulations, primarily because Congress has spe-

11. *See Mountain Fuel Supply Co. v. Johnson,* 586 F.2d 1375 (10th Cir. 1978).

12. "To avoid a recurrence of the confusion and delay suffered by the parties in the instant case, we take this opportunity to state the accommodation which will be made in future cases where this Court is asked to review an order of the Federal Power Commission raising Federal Power Act issues which appear inextricably interwoven with issues arising under the Economic Stabilization Act. Our course, at least generally, will be to hold our review in abeyance until review by the District Court and TECA is completed. This will permit TECA to dispose of questions under the Economic Stabilization Act. TECA's disposition under Section 211(a) of that Act will clarify what questions may remain for disposition by this Court under

Section 313(b) of the Federal Power Act. This is a common sense accommodation of the two jurisdictional schemes." 162 U.S.App.D.C. 260 at 265, 498 F.2d 993 at 998 (1974).

13. See Footnote 10(b), *supra.*

14. See Footnote 7, *supra.*

15. See Footnote 7, *supra.*

16. Section 202 thereof "authorized" the President to stabilize the economy.

17. Section 207(b) of 1971 amendments to ESA.

18. Section 207(c) of 1971 amendments to ESA.

cifically exempted matters relating to *"agency management or personnel"* from the prior notice, comment and other requirements of the rule making provisions of the Administrative Procedure Act. Title 5 Section 553(a)(2), U.S.C.

Under these circumstances, we conclude that the issuance of FPM Letter 352–6, *supra,* announcing the FEA policy and CSC's concurrence therein, and disseminated in the Federal Personnel Manual, served the same purpose as publication of a regulation in the Code of Federal Regulations.

 Finally, we find support for this opinion in the fact that the continuous interpretation of Section 212(g)(1) by the Civil Service Commission, the Cost of Living Council, the Federal Energy Office, and the Federal Energy Administration, was ratified by repeated Congressional re-enactment of the section. The 1971 amendments were extended an additional year and then incorporated into the newly enacted Emergency Petroleum Allocation Act. The EPAA, including the incorporated ESA re-employment rights, was then extended on four occasions.[19] Congress is presumed to have had knowledge of the administrative interpretations placed on this section by the agencies concerned and to have embraced those interpretations by re-enacting and incorporating those provisions in Section 5(a)(1) of the EPAA. In *National Lead Co. v. United States,* 252 U.S. 140 at 146, 40 S.Ct. 237 at 239, 64 L.Ed. 496, the United States Supreme Court has held that "the re-enacting of the . . . provision four times, without substantial change, while this method of determining what should be paid under it was being constantly employed, amounts to an implied legislative recognition and approval of the executive construction of the statute (cases cited) for Congress is presumed to have legislated

with knowledge of such an established usage of an executive department of the government." [20]

We conclude that FEA's unilateral exercise of plaintiff's re-employment rights was based upon a valid and well-established administrative interpretation of the statutory provision.

For the foregoing reasons, we reverse the district court and remand with instructions to enter judgment for the defendant FEA.

REVERSED.

---

19. The EPAA originally was to have expired on Feb. 28, 1975. The EPAA was subsequently extended without substantial amendment on three occasions: to Aug. 31, 1975 (P.L. 93–511); to Nov. 15, 1975 (P.L. 94–99); and to Dec. 15, 1975 (P.L. 94–133). The EPAA was re-enacted with substantial amendments in P.L. 94–163, and the President's regulatory authori-

ty now expires on Sept. 30, 1981. Further substantive amendments to the EPAA were enacted in P.L. 94–385.

20. 2A Sutherland, *Statutes and Statutory Construction,* § 49.09, Note 10 (Sands 4th Ed., 1973). *See also Hertsche v. United States,* 244 F.Supp. 347 at p. 349 (D.C.Or.)