CONNECTICUT MUNICIPAL GROUP,
Petitioners,

v.

FEDERAL POWER COMMISSION,
Respondent,

Connecticut Light and Power Company, Intervenor.

No. 72-2208.

United States Court of Appeals,
District of Columbia Circuit.

April 15, 1974.

Charles F. Wheatley, Jr., Washington, D. C., for petitioners.

Leo E. Forquer, George W. McHenry, Jr. and Charles J. McLees, for respondent.

Jerome Ackerman, James R. McCotter, Washington, D. C., James R. McIntosh and Paul F. McAlenney, Hartford, Conn., for intervenor.

Before TAMM and LEVENTHAL, Circuit Judges.

PER CURIAM:

The Connecticut Municipal Group moves to reinstate its petition for review of an order of the Federal Power Commission [1] which was dismissed for lack of jurisdiction by order of this Court on July 23, 1973. After further consideration we conclude that the issue which the Connecticut Municipal Group seeks to have litigated is properly reviewable by this Court and accordingly

1. Order 437A–12, 48 F.P.C. 837 (Oct. 12, 1972).

grant the motion. Because of the confusion generated by the Court's dismissal and subsequent events, and in order to avoid in future cases the delay suffered by the parties in this case, we record in this opinion the accommodation that will be made in prospective cases presenting similar circumstances.

## I.

Since 1964 the Connecticut Light and Power Company (CL&P) has sold electricity wholesale to various public agencies in Connecticut represented by the Connecticut Municipal Group (CMG) [2] pursuant to contracts filed with the Federal Power Commission as rate schedules under Section 205 of the Federal Power Act.[3] Fuel adjustment clauses permitted CL&P to pass on increases in cost of fuel without the necessity of filing new tariffs with the FPC.

On August 15, 1971, the President issued Executive Order 11615 [4] which, under authority of the Economic Stabilization Act,[5] initiated Phase I of the Wage-Price Freeze. To implement that executive order with respect to public utilities subject to its jurisdiction, FPC issued Order 437 [6] which prohibited rate increases for the duration of Phase I— from August 15 to November 14, 1971. This suspended operation of CL&P's fuel adjustment clauses during that period.

By Executive Order 11627 [7] the President delegated to the Price Commission the authority to control price changes during Phase II. In the Price Commission's regulations, Section 300.016(a) [8] permitted rate increases by public utilities on or after November 14, 1971, provided the increase had been approved by the regulatory agency having jurisdiction over the utility.[9] Section 300.-016(b) [10] allowed rate increases which had been approved by a regulatory agency prior to November 14, 1971, but had been suspended by Executive Order 11615, if reviewed by the regulatory agency and found "consistent with" the purposes of the Economic Stabilization Act.

In response to these regulations, FPC issued Order 437A,[11] which related to rate increases in general by public utilities, and Order 437A–5,[12] which was directed specifically to rate increases under suspended fuel adjustment clauses on file with FPC. Order 437A provided that any rate increases prevented by Phase I would be reviewed for consistency with the purposes of the Economic Stabilization Act and that any rate approved by FPC would be effective as of November 14, 1971. By Order 437A–5, FPC concluded that its own regulation 35.14,[13] which established the standards for approval of fuel adjustment clauses, was consistent with the purposes of the Economic Stabilization Act and therefore would be employed as the standard for determining whether the suspended clauses were consistent with that Act.

2. Those agencies, organized under the laws of Connecticut, are the City of Groton, the Borough of Jewett City, the Second and Third Taxing Districts of the City of Norwalk, the City of Norwich, the Town of Wallingford and the Connecticut Municipal Electric and Gas Association. The Connecticut Municipal Electric and Gas Association is a statewide association of municipally-owned gas and electric utilities.

3. 16 U.S.C. § 824d (1970).

4. 3 C.F.R. § 199 (1972).

5. 12 U.S.C. § 1904 note (Supp. II, 1972).

6. 46 F.P.C. 374 (1971), codified as 18 C.F.R. § 2.90 (1972).

7. 3 C.F.R. § 218 (1972).

8. 36 Fed.Reg. 21953–54 (1971), subsequently renumbered Section 300.16(a), 36 Fed.Reg. 23977 (1971).

9. Although Section 300.016(a) originally required utilities to notify the Price Commission of the agency's approval, it was later amended to reserve to the Price Commission the "right to review and limit the amount of any such requested increase . . ." 36 Fed.Reg. 22014 (1971).

10. 36 Fed.Reg. 21954 (1971), subsequently renumbered Section 300.16(b), 36 Fed.Reg. 23977 (1971).

11. 46 F.P.C. 1219 (1971), codified as 18 C. F.R. § 2.90a (1972).

12. 46 F.P.C. 1308 (1971).

13. 18 C.F.R. § 35.14 (1972).

In order to reactivate the clauses and increase the electricity rates pursuant thereto, public utilities were directed to certify to the FPC, with supporting data, that rate increases to be made under the clauses complied with Section 35.14.[14]

After reviewing the information submitted by the Connecticut Power and Light Company, on October 12, 1972, the FPC issued Order 437A–12,[15] approving CL&P's fuel adjustment clauses and, in accordance with Order 437A, authorizing rate increases based on those clauses to become retroactively effective as of November 14, 1971. The order provided that "this date, however, shall be subject to authorization by the Price Commission and we shall so provide." [16]

Pursuant to Price Commission regulation 300.308(e), which exempted from reporting and certification requirements any rate increases made under fuel adjustment clauses and approved by the FPC, CL&P requested the Price Commission's concurrence that the rate increase could become effective without its approval. By letter of November 28, 1972, the Price Commission indicated its concurrence. After FPC denied rehearing of Order 437A–12 on December 1, 1972, the Connecticut Municipal Group filed a petition to review that order in this Court. We granted CL&P leave to intervene on February 14, 1973.

## II.

The question CMG presented to this Court was whether FPC's approval on October 12, 1972, of an effective date of November 14, 1971, for cost increases under the fuel adjustment clauses constituted retroactive ratemaking in violation of the Federal Power Act. Contemporaneously with the petition filed in this Court, CMG's members filed an action in District Court [17] which challenged Order 437A–12 both as inconsistent with the Economic Stabilization Act, and as retroactive ratemaking violative of the Federal Power Act.

CL&P and the FPC moved to dismiss the petition on the ground that Order 437A–12 was issued not under authority of the Federal Power Act but solely under the Economic Stabilization Act, and that only the District Court and the Temporary Emergency Court of Appeals (TECA) had jurisdiction to review the order by virtue of Section 211(a) and (b) of the Economic Stabilization Act.[18] This Court dismissed the petition on July 23, 1973, "for lack of jurisdiction." No memorandum accompanied the order. It was unclear whether this Court dismissed the petition because no Federal Power Act issues were raised or because the issue of retroactive ratemaking, though perhaps plausible, was so integrated with the price stabilization issues as to make separate reviews in this Court and TECA impracticable.

On October 30, 1973, TECA upheld Order 437–12 on the ground that it was consistent with the purposes of the Economic Stabilization Act.[19] Although the retroactive ratemaking issue was argued before TECA, and although it was

---

14. These series of regulations and FPC orders are discussed more elaborately in City of Groton v. FPC, 487 F.2d 927, 929–931 (Em.App.1973), and Municipal Intervenors Group v. FPC, 153 U.S.App.D.C. 373, 374–375, 473 F.2d 84, 85–86 (1972).

15. 48 F.P.C. 837 (Oct. 12, 1972).

16. *Id.* at 838.

17. City of Groton v. FPC, C.A. No. 56–73 (D.D.C., filed Jan. 10, 1973).

18. 12 U.S.C. § 1904 note (Supp. II, 1972). Section 211(a) provides in part:
   The district courts of the United States shall have exclusive original jurisdiction of

cases or controversies arising under this title, or under regulations or orders issued thereunder, notwithstanding the amount in controversy; . . .
Section 211(b)(2) reads in part:
   Except as otherwise provided in this section, the Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder.

19. City of Groton v. FPC, 487 F.2d 927 (Em.App.1973).

aware of this Court's dismissal of CMG's petition for review, TECA specifically declined to reach the issue, stating:

> We do not reach this issue because we cannot. It is our view that an allegation of retroactive ratemaking raises issues under the Federal Power Act. [citations omitted] This Court is not the proper forum to hear such issues. The law is clear that Power Commission orders which raise Economic Stabilization issues are exclusively reviewable in the District Court, with review in this court. Orders raising Federal Power Act issues are exclusively reviewable in the Court of Appeals.[20]

CMG now returns to this Court for reinstatement of its petition for review challenging Order 437A–12 as retroactive ratemaking that is violative of the Federal Power Act.

### III.

Under Section 313(b) of the Federal Power Act[21] jurisdiction to review FPC orders under that Act is vested exclusively in the United States courts of appeals. In the Economic Stabilization Act of 1970, as amended,[22] however, Congress granted exclusive original jurisdiction to the federal district courts over "cases or controversies arising under this title, or under the regulations or orders issued thereunder."[23] Appeals from such decisions of the district courts may be taken only to the specially-created Temporary Emergency Court of Appeals.[24]

The possibility of dual jurisdiction to review an agency order under the Economic Stabilization Act and another regulatory statute is not a novel question for this Court. In Municipal Intervenors Group v. FPC, 153 U.S.App.D.C. 373, 473 F.2d 84 (1972), this Court was confronted with a petition to review two FPC orders permitting certain natural gas rate increases. The proposed increases had been filed with FPC before Phase I, but were suspended until October 1971, pending a hearing on the lawfulness of the rates. The issuance of Order 437[25] further suspended the rates until November 14, 1971, the termination date of Phase I. Pursuant to the Price Commission's regulations and FPC Order 437A,[26] FPC subsequently issued the two orders permitting the suspended rates to take effect. The only question proposed to be litigated in this Court was whether the orders contravened the regulations of the Price Commission and the purposes of the Economic Stabilization Act. In holding that this Court lacked jurisdiction over the petition for review, the Court observed:

> [A] claim that the FPC has erred in its determination that a rate increase is consistent with the Economic Stabilization Act, is a claim arising under that Act, and . . . Congress has made clear an intent for a special and limited judicial review of any such claim of illegality of agency action.[27]

Consequently, jurisdiction to review the orders was restricted to the district courts and TECA.

---

20. *Id.* at 935.

21. 16 U.S.C. § 825*l*(b) (1970):
    Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia.

22. 12 U.S.C. § 1904 note (Supp. II, 1972).

23. *Id.*

24. *Id.* As this Court previously has observed, Congress established this unique method of review "in order to prevent the possibility of conflicting rulings by intermediate United States appellate courts, and danger to the anti-inflation program." Municipal Intervenors Group v. FPC, 153 U.S. App.D.C. 373, 378, 473 F.2d 84, 89 (1972).

25. Note 6 *supra*.

26. Note 11 *supra*.

27. 153 U.S.App.D.C. at 379, 473 F.2d at 90.

The Court nevertheless recognized that because utility rates were subject to two types of regulatory controls during the Wage-Price Freeze, questions could arise under two different regulatory statutes, thereby presenting the possibility of two avenues for judical review.[28] However, since the sole issue raised was whether the orders conformed with the Economic Stabilization Act, the occasion to resolve that problem was not presented.

That occasion subsequently arose in Municipal Electric Utility Ass'n of Alabama v. FPC, 158 U.S.App.D.C. 188, 485 F.2d 967 (1973), where petitioners alleged that an FPC order denying petitions to reject new rate filings violated certain provisions of the Federal Power Act and FPC regulations and additionally was inconsistent with the Economic Stabilization Act. Although holding that under Municipal Intervenors Group v. FPC, *supra*, only the district courts and TECA could entertain the Economic Stabilization Act issue, the Court determined that the Power Act issues created by the order were cognizable exclusively in the United States courts of appeals under the traditional review powers granted by Section 313 of the Federal Power Act. Critical to the Court's decision was its conclusion that "the issues on appeal arising under the Federal Power Act may be *cleanly severed* from those that require consideration of the Economic Stabilization Act." [29]

Left unsettled by these two decisions was the question of which court had jurisdiction over controversies raising Power Act issues which were not "cleanly severable" from Economic Stabilization Act issues. As to that category of

cases, the Court in *Municipal Electric* stated:

We have no occasion to consider what sort of accommodation would be necessary in a case where questions reviewable under the Power Act are *inseparably interwoven* with matters arising under the Economic Stabilization Act.[30]

Initially, the Court viewed this case as falling within this third category.

Under the Federal Power Act, FPC could not have suspended CL&P's existing fuel adjustment clauses without a hearing and a determination that the rates charged under those clauses are "unjust, unreasonable, unduly discriminatory or preferential." [31] Since these prerequisites did not exist in this case, the clauses could have been suspended and subsequently reactivated solely under the authority of the Economic Stabilization Act and its implementing regulations. The question CMG raises is whether FPC's determination that such reactivation and consequent increased rates could become effective on a date over a year prior to the date of the order constitutes retroactive ratemaking prohibited by the Power Act. The validity of that challenge seemed to turn on the lawful effect of the Economic Stabilization Act and the price control regulations on the Federal Power Act. When the petition for review in this case was dismissed, this question appeared so integrated into an analysis of the purpose and legislative intent of the Economic Stabilization Act that its extraction and separate review by this Court would have frustated the goals of efficient, speedy and consistent review contemplated by the Economic Stabilization Act.[32] Consequently, to preserve

---

28. *Id.*

29. 158 U.S.App.D.C. at 191–192, 485 F.2d at 970–971 (emphasis added, footnote omitted).

30. *Id.* at 192 n. 15, 485 F.2d at 971 n. 15 (emphasis added).

31. 16 U.S.C. § 824e(a) (1970).

32. This Court noted these legislative objectives in Municipal Intervenors Group v. FPC, 153 U.S.App.D.C. at 379, 473 F.2d at 90. They are set forth in the Senate Report to the Economic Stabilization Act amendments, S.Rep.No.507, 92d Cong., 1st Sess. 10 (1971).

the case intact for review by the District Court and TECA, this Court dismissed the petition in deference to the jurisdiction of those courts.

 The Temporary Emergency Court of Appeals has now expressed its view that it could decide the price control issues without reviewing the question of retroactive ratemaking, which it regarded as beyond the scope of its jurisdiction.[33] Thus, CMG has been deprived of any judicial consideration of its challenge to Order 437A–12 under the Power Act. This result was not contemplated by this Court when it dismissed CMG's petition for review. In the interest of justice, *see* 28 U.S.C. § 2106, we believe it necessary and appropriate to grant the motion to reinstate.[34]

 To avoid a recurrence of the confusion and delay suffered by the parties in the instant case, we take this opportunity to state the accommodation which will be made in future cases where this Court is asked to review an order of the Federal Power Commission raising Federal Power Act issues which appear inextricably interwoven with issues arising under the Economic Stabilization Act. Our course, at least generally, will be to hold our review in abeyance until review by the District Court and TECA is completed. This will permit TECA to dispose of questions under the Economic Stabilization Act. TECA's disposition under Section 211(a) of that Act will clarify what questions may remain for dispostion by this Court under Section 313(b) of the Federal Power Act. This is a common sense accommodation of the two jurisdictional schemes.

So ordered.

33. Note 20 *supra* and accompanying text.

34. FPC and CL&P regard the instant motion as, in substance, one for rehearing which, by virtue of the time limitation imposed by Fed.R.App.P. 40, they contend is now barred. This argument ignores the equitable power retained by the federal courts to vacate or modify their orders to prevent injustice. *See* Greater Boston Television Corp. v. FCC, 149 U.S.App.D.C. 322, 361, 463 F. 2d 268, 277 (1971).