**TENNESSEE GAS PIPELINE COMPA-NY, a Division of Tenneco, Inc., Petitioner,**

**v.**

**FEDERAL POWER COMMISSION, Respondent,**

**Columbia Gas Transmission Corporation et al., Intervenors.**

**No. 72–1945.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 11, 1974.

Decided Aug. 1, 1974.

Dale A. Wright, Washington, D. C., for petitioner.

Charles E. Bullock, Atty., Federal Power Commission, for respondent. Leo E. Forquer, Gen. Counsel, Federal Power Commission, George W. McHenry, Jr., Sol. and Joan E. Heimbigner, Atty., Federal Power Commission, were on the brief, for respondent.

Peter H. Schiff, Albany, N. Y., entered an appearance for intervenor, The Public Service Commission of the State of New York.

Daniel L. Bell, Jr., Charleston, W. Va., entered an appearance for intervenor Columbia Gas Transmission Corp.

Barbara M. Gunther, Brooklyn, N. Y., entered an appearance for intervenor, The Brooklyn Union Gas Co.

John E. Holtzinger, Jr., Washington, D. C., entered an appearance for intervenor, Consolidated Gas Supply Corp.

John W. Glendening, Jr., New York City, N. Y., entered an appearance for intervenor, The Berkshire Gas Co., and others.

William W. Winter, Chicago, Ill., entered an appearance for intervenor, The Peoples Gas Light and Coke Co., and others.

B. Jenkins Middleton, Washington, D. C., entered an appearance for intervenor, Rochester Gas and Electric Corp.

Before MacKINNON and WILKEY, Circuit Judges, and JAMESON,* United States Senior District Judge for the District of Montana.

PER CURIAM:

Tennessee Gas Pipeline Company (Tennessee) petitions this court to review and set aside a letter order of the Federal Power Commission (the Commission) issued July 31, 1972, which rejected a "Purchased Gas Cost Tracking Rate Increase" filed by Tennessee. We find that the July 31st order was in direct conflict with a prior Commission order, and direct the July 31st order to be set aside.[1]

A "tracking rate change" enables a pipeline to adjust its rates to reflect certain cost increases without following the detailed procedures required for a general rate change. In 1970 the Commission instituted a rulemaking to establish a uniform policy for tracking rate changes. This rulemaking culminated in Order No. 452, issued April 14, 1972, which established a new procedure for pipelines to include Purchased Gas Adjustment provisions (PGA clauses) in their gas tariffs.

Prior to the issuance of Order No. 452, Tennessee filed a revised tariff to which several parties objected. Rather than undergo an extensive hearing procedure, and pursuant to the Commission's policy encouraging settlements, Tennessee and the other interested parties submitted a settlement agreement on the new tariff for Commission approval. On May 19, 1972, the Commission issued Opinion and Order No. 619 which approved the settlement agreement with minor changes.

The approved settlement agreement permitted tracking rate changes during a prescribed transition period. After the expiration of the transition period, tracking rate changes would be governed by the new PGA procedures established by Order No. 452. Although the settlement agreement as submitted to the Commission authorized tracking rate changes until December 31, 1972, by Or-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. We have jurisdiction to set aside the July 31st order under 15 U.S.C. § 717r(b) (1970).

der No. 619 the Commission cut back the transition period so that the tracking authority would expire June 13, 1972. In addition to the time limitation on the tracking authority, the settlement agreement imposed two conditions: (1) any tracking rate increase must take effect on the first of a month, and (2) a tracking increase must be filed 40 days in advance of its effective date.[2]

Noting that it had approved similar tracking provisions in other cases, the Commission in Order No. 619 approved tracking authority for Tennessee as being "reasonable and proper and in the public interest in carrying out the provisions of the Natural Gas Act." See Jt. App. at 30–32. However, Order No. 619 resulted from a 3–2 decision of the Commission, Commissioners Brooke, Walker and Carver forming the majority. Chairman Nassikas and Commissioner Moody dissented.

On June 13, 1972, Tennessee attempted to exercise its tracking rate authority by filing a tracking increase to become effective August 1, 1972. This tracking increase was filed within the transition period established by Order No. 619. However, in an order dated July 31, 1972, the Commission denied the increase on the ground that a tracking increase had to become *effective* within the authorized period and not merely be *filed* during such period. The Commission stated that its action "reflects the approach consistently applied by the Commission that tracking filings must become effective on or before the date the tracking authority terminates."[3] It

---

2. Order No. 619 stated:

The purchased gas cost tracking provisions in Articles VIII and XIII of the Settlement are approved upon condition that such tracking authority shall expire 60 days from the April 14, 1972, issue date of Commission Order No. 452.

Jt. App. at 35. Pertinent portions of Articles VIII and XIII of the settlement agreement provide:

ARTICLE VIII

Tracking Rate Changes for Changes in Gas Suppliers' Rates

*Section 1.* From time to time during the Moratorium Period, Tennessee's jurisdictional rates shall be adjusted downward and may be adjusted upward to reflect changes in Tennessee's cost of purchased gas in accordance with the procedures in this Article VIII and Article XIII hereof.

. . . . .

ARTICLE XIII

Procedures for Filing Tracking Rate Changes

*Section 1.* At least forty days prior to the Effective Date of Adjustment for each rate change filed pursuant to Articles VIII, IX, X, XI and XII hereof, Tennessee shall file with the Commission and post as defined by Section 154.16 of the Commission's Regulations revised tariff sheets to reflect the effective rate after the rate change as determined pursuant to each of such Articles and this Article XIII. Each such filing shall include the necessary computations to show such determination of each rate change.

*Section 2.* The Effective Date of Adjustment for each rate change filed pursuant to Articles VIII, IX, XI and XII shall be that specified in Tennessee's filing thereunder and shall be the first day of a calendar month.

. . . . .

*Section 5.* All rate changes filed pursuant to Articles VIII through XIII hereof shall be permitted to become effective as of the Effective Date of Adjustment specified in each such filing without suspension, condition, or refund obligation, except for the limited refund obligations provided in Section 7 of Article IX hereof, Section 5 of Article XI hereof, and Section 4 of Article XII hereof.

*Section 6.* Rate changes filed pursuant to Articles VIII through XII hereof shall be coordinated so that Tennessee shall make no more than five such rate changes before the end of the Moratorium Period. Tennessee may, therefore, combine rate filings under two or more of such Articles without regard to the limitations on frequency of filing or minimum amounts set forth in said Articles for separate filings thereunder.

Jt. App. at 8, 19–21.

3. Despite the Commission's reference to "the approach consistently applied by the Commission," in this appeal counsel for the Commission candidly acknowledges:

This is a case of first impression, as there has been no other express Commission interpretation of the phrase "expiration of tracking authority." Without any prior Commission interpretation of judicial precedents to be followed, the question to be asked is whether the Commission's interpretation was reasonable.

Brief for FPC at 13.

is this July 31st order which we are asked to review.

On a petition for rehearing of the July 31st order, the Commission split 2–2 and hence the petition was denied. The two members voting to deny rehearing were Chairman Nassikas and Commissioner Moody, the same two members who had dissented from initial approval of the settlement agreement. The fifth Commission member who had participated in Order No. 619, Commissioner Carver, had resigned in the interim and his replacement had not yet been appointed.

The effect of the July 31st order was completely to abrogate the tracking authority approved by Order No. 619 because, under the July 31st interpretation, it was impossible for Tennessee ever to obtain a tracking rate change under the settlement agreement. The settlement agreement was approved on May 19th. In view of the requirement for 40-days notice and the provision that tracking rate changes must take effect on the first of a month, the earliest possible date that a tracking increase could become effective was July 1st. But July 1st was beyond the June 13th expiration date of the tracking authority. Thus, by interpreting the settlement agreement to require the tracking change to become effective within the authorized period, the two Commissioners who originally dissented from approving the settlement agreement effectively overruled that agreement by "interpreting" the tracking authority out of existence.

At oral argument counsel for the Commission (that is, counsel for the two members of the Commission who voted to deny rehearing) acknowledged that under the interpretation contained in the July 31st order, it was impossible for Tennessee ever to exercise the tracking authority contained in the settlement agreement and approved by Order No. 619. The Commission also acknowledges that it is bound by approved settlement agreements. Brief for FPC at 18; see, e. g., Chicago v. FPC, 128 U.S. App.D.C. 107, 116–119, 385 F.2d 629, 638–641 (1967), cert. denied, 390 U.S. 945, 88 S.Ct. 1028, 19 L.Ed.2d 1133 (1968). To support its position the Commission relies entirely on its general power to interpret ambiguous contractual terms, and argues that the July 31st order represents a reasonable interpretation of the settlement agreement.

We cannot accept the Commission's view that a reasonable interpretation is one which completely destroys the provision being interpreted. Although the settlement agreement and Order No. 619 did not explicitly state whether the tracking rate change must be filed or must become effective during the authorized period, we must conclude that the Commission intended tracking rate authority to exist during some period. Otherwise, it was pointless for the Commission in Order No. 619 expressly to ratify tracking authority for Tennessee and to establish a transition period for its exercise. The only interpretation consistent with the apparent intent of Order No. 619 is that the tracking rate change must be *filed* within the authorized period.

Since the contrary interpretation embodied in the July 31st order is unreasonable and conflicts with prior Order No. 619, the order of July 31, 1972, must be set aside.

Judgment accordingly.