659 F.2d 1228
 212 U.S.App.D.C. 344
 TRANSCONTINENTAL GAS PIPE LINE CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Public Service Commission of the State of New York, Intervenor.
TRANSCONTINENTAL GAS PIPE LINE CORPORATION, Appellant,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 Nos. 78-1632, 78-2193.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 19, 1979.
Decided July 30, 1981.
 
 Appeal from the United States District Court for the District of Columbia (D.C.Civil Action No. 78-1241).
 Frank X. Kelly, Washington, D. C., with whom Thomas F. Ryan, Jr., Washington, D. C., was on the brief, for petitioner-appellant.
 JoAnne Leveque, Atty., Federal Energy Regulatory Commission, Washington, D. C., with whom Howard E. Shapiro, Sol., Washington, D. C., was on the brief, for respondent-appellee.
 Steven A. Taube, Atty., Federal Energy Regulatory Commission, Washington, D. C., also entered an appearance for respondent in No. 78-1632.
 Richard A. Solomon, Washington, D. C., with whom Peter H. Schiff, General Counsel, Public Service Commission of the State of New York, Albany, N. Y., and Dennis Lane, Washington, D. C., were on the brief, for intervenor in No. 78-1632.
 Before ROBINSON, Chief Judge, MIKVA, Circuit Judge, and MARKEY, Chief Judge,* United States Court of Customs and Patent Appeals.
 Opinion for the Court filed by Chief Judge SPOTTSWOOD W. ROBINSON, III.
 SPOTTSWOOD W. ROBINSON, III, Chief Judge:
 
 
 1
 The challenge here is to orders of the Federal Power Commission[1] denying Transcontinental Gas Pipe Line Corporation (Transco) a rate increase on natural gas shipments made while a presidential price freeze was in effect.[2] The issues presented are close and complex, but we believe the Commission ultimately ruled correctly. We accordingly affirm the orders under review.
 
 I. THE TWO STATUTES
 
 2
 Natural gas companies must, under Section 4(a) of the Natural Gas Act, charge just and reasonable rates for the transportation and sale of their product.[3] Should they undertake to change their rates unilaterally, the proposed modifications must in most instances be filed with the Commission thirty days before going into effect.[4] The Commission, either on complaint or on its own initiative, may investigate the lawfulness of any such rate, and implementation of increases may be delayed for up to five months pending a decision.[5] As a rule, the Commission approves as just and reasonable those rates that cover the company's costs of supplying the service and provide a fair margin of return.[6]
 
 
 3
 The regulatory impact of a second statute the Economic Stabilization Act of 1970[7] however, precipitated the present controversy. That legislation, since expired,[8] gave the President authority to freeze wages and prices in an effort to combat inflation.[9] This measure was dutifully greeted by the Commission, which pledged to "carry out (its) responsibilities under the Natural Gas Act ... by establishing just and reasonable rates with a view toward consistency of those rates with the Economic Stabilization Act."[10] It is the relationship between these two statutes that we must consider.
 
 II. THE RATE INCREASE
 
 4
 Transco, an interstate gas pipeline company subject to the Natural Gas Act,[11] filed with the Commission in late 1972 a higher rate calculated to generate additional revenues of more than $42 million annually. The Commission suspended the new charges until July 1, 1973, and scheduled a hearing. The President imposed a 60-day price freeze on June 13,[12] however, forcing postponement of any rate elevation until August 13.
 
 
 5
 Subsequently, Transco and protestants against the proposed rates settled their differences, agreeing to an increase of approximately $35 million. Of particular importance here is that the agreement, in Article IV, addressed the 43-day period from July 1 through August 12 during which the new rates had been frozen by presidential decree, and provided that Transco would be permitted to recoup its foregone revenues.[13] The agreement, however, expressly conditioned the operation of Article IV on "the approval of the Cost of Living Council or any successor agency under the Economic Stabilization Act of 1970,"[14] and specified that "such rate treatment shall not be effectuated by Transco unless the Cost of Living Council or successor agency ... permits...."[15]
 
 
 6
 Despite objections to Article IV,[16] the Commission, by order on April 4, 1974, accepted the settlement, arguably in its entirety. On the controversial recoupment point, the Commission found itself "unable to determine ... whether authority to approve Article IV resides with this Commission or with the Cost of Living Council,"[17] but announced that "(t)o the extent jurisdiction rests with this Commission, we find that Article IV is reasonable, and should be approved,"[18] Transco was accordingly directed to seek the Council's approbation and report to the Commission on its efforts.[19] The order then cryptically added that the Commission would "consider such representations by Transco in determining the action to be taken."[20]
 
 
 7
 The status of Article IV was thrown into additional confusion when the Cost of Living Council balked at endorsement of the recoupment feature of the agreement. The Council refused to expressly approve or disapprove Article IV but left little doubt as to its position, declaring that "the (Commission) should not approve any rate increase which is specifically based upon the principle of retroactive recovery of revenues..."[21] A similar position was later taken by the Council's successor, the Office of Economic Stabilization of the Treasury Department, upon Transco's application for reconsideration.[22] Faced with the loss of its Article IV revenues, Transco brought suit against the Treasury Department, seeking to set aside its conclusion on Article IV.[23]
 
 
 8
 Again fate intervened. The Economic Stabilization Act had expired on April 30, 1974;[24] and five months thereafter the Temporary Emergency Court of Appeals which has exclusive jurisdiction to consider issues arising under that legislation[25] held in unrelated litigation[26] that the Council was without authority, except in narrowly circumscribed circumstances, to issue orders affecting events transpiring after expiration of the Act.[27] Consonantly, Transco and the Treasury Department stipulated that the Department lacked jurisdiction under the Stabilization Act to bar operation of the rate increase during the period of the price freeze, that Transco's suit was moot, and that consequently the "determinations by the Cost of Living Council and Office of Economic Stabilization, respectively, do not prohibit the implementation of Article IV...."[28] Transco's suit was accordingly dismissed.[29]
 
 
 9
 Transco then returned to the Commission, requesting unqualified approval of Article IV. Pending resolution of the problem, the Commission allowed Transco to collect, subject to refund, the new charges from the date of expiration of the Commission's suspension, including the 43-day period during which they were frozen by presidential order.[30] In the end, however, despite the Commission's earlier conditional sanction and the subsequent Transco-Treasury stipulation,[31] the Commission refused to countenance any increase for that period.[32] Acknowledging its "exclusive jurisdiction,"[33] the Commission reminded that it was "required ... to establish just and reasonable rates under the Natural Gas Act 'with a view toward consistency of these rates with the Economic Stabilization Act....' "[34] Any rate violative of the latter, the Commission reasoned, "would in turn be unjust and unreasonable within the meaning of the Natural Gas Act to the extent of such violation;"[35] Article IV, which purportedly enabled retention of the revenues threatened by the freeze, fell into that category.[36] The 1974 order, which debatably favored recapture of those revenues, was distinguished: the Commission said that it had simply deferred the issue for future resolution,[37] and pointed out that approval by the Cost of Living Council, which the settlement agreement had expressly made a condition precedent to the validity of Article IV,[38] had never been granted.[39] Transco therefore was ordered to refund the revenues collected pursuant to Article IV.[40] An application for rehearing proved unavailing,[41] whereupon Transco came to this court.[42]
 
 III. THE SETTLEMENT AGREEMENT
 
 10
 At the threshold, we face a comparatively straightforward question: whether the settlement agreement and the Commission's 1974 order accepting it validly entitled Transco to retain the revenues generated while its rate increase was frozen. If so, the inquiry need proceed no further, for parties undoubtedly are bound by settlement contracts into which they enter.[43]
 
 
 11
 We believe, however, that the issue is settled by the fundamental maxim of contract law that "failure to occur of a condition upon which the bargain has been expressly or impliedly predicated excuses all parties to the contract from performing."[44] The settlement agreement unmistakably erected condition precedent to operation of Article IV approval by the Cost of Living Council.[45] "(T)he foregoing rate treatment (in Article IV)," the agreement specified, "shall be subject to the approval of the Cost of Living Council;"[46] "such rate treatment," the agreement reiterated, "shall not be effectuated by Transco unless the Cost of Living Council or successor agency ... permits."[47] That approbation was never forthcoming; both the Council and its successor rejected Article IV on its merits.[48] And surely the Transco-Treasury stipulation, although acknowledging Treasury's lack of jurisdiction to reject Article IV,[49] was not the affirmative endorsement of conformity with the Economic Stabilization Act that the settlement agreement contemplated. By its terms, Article IV never went into effect.
 
 
 12
 Our conclusion is not changed by the obviously ambiguous language of the order accepting the settlement agreement. What the Commission there said was that "(t)o the extent the Cost of Living Council retains jurisdiction to approve the provisions of Article IV of the settlement, we defer to that jurisdiction. To the extent jurisdiction rests with this Commission, we find that Article IV is reasonable, and should be approved."[50] Viewed alone, this language might be taken to mean that, given the Council's lack of jurisdiction, the efficacy of Article IV stood confirmed by the Commission. But the order went further:
 
 
 13
 We shall require Transco, as a condition to approval of the proposed settlement, to make application to the Cost of Living Council for approval of ... Article IV .... At such time as Transco applies to this Commission for authorization to track these deferred amounts, it shall submit a statement outlining its efforts to obtain Cost of Living Council approval, and the results of such efforts. We shall consider such representations by Transco in determining the action to be taken.[51]
 
 
 14
 That, in sharp contrast to the language of the clause purporting to rule "(t)o the extent jurisdiction rests with (the) Commission"[52] indicates unmistakably that actually the Commission was reserving decision, and planned to make a final determination after Council action. And by no means was this the only pointer in that direction.
 
 
 15
 Much earlier the Commission, by regulation, had pledged to maintain consistency with the Economic Stabilization Act when promulgating just and reasonable rates under the Natural Gas Act.[53] Understandably, the Commission would defer to the Cost of Living Council, as it did here, whenever there was doubt as to which agency had jurisdiction.[54] But it hardly could have been contemplated that Stabilization Act principles and the Commission's regulations endorsing them would escape consideration entirely should it turn out that for some reason the Council was unable to rule on their effect. Yet the Commission's 1974 order, while explicitly examining and accepting the settlement's treatment of traditional ratemaking criteria,[55] nowhere discussed the role of the Stabilization Act or even the problem it potentially posed. The only sensible reading of the order, then, is that the Commission, when it said that "(t)o the extent" that it had jurisdiction, it found "that Article IV is reasonable, and should be approved,"[56] was referring to reasonableness and approval under the Gas Act rather than the Stabilization Act. It thus appears that the Commission did not deal with Article IV at all in terms of the latter Act, because it was unsure whether it had authority to do so.
 
 
 16
 That indubitably was the Commission's reading of the 1974 order when in 1978 it made its ultimate ruling on Article IV. The earlier order, the Commission stated, "left for future decision questions pertaining to Transco's possible failure to obtain Cost of Living Council approval of ... Article IV...."[57] A later agency order can, of course, clarify an earlier ambiguous one;[58] and "(i)n such a circumstance, enforcement of the clarifying language is wholly appropriate."[59] That, we think, puts the matter completely to rest. We conclude that the Commission never sanctioned operation of the rate increase by virtue of Article IV or otherwise while the President's price freeze was in force, and we sustain the Commission's holding that Transco's inability to obtain Council approval freed Transco's customers of any obligations under Article IV.
 
 IV. THE STATUTORY RELATIONSHIP
 
 17
 The propriety of the Commission's final order, however, is not assured by our determination that Article IV is non-binding. The Commission acknowledged that were it to apply traditional ratemaking criteria, it would approve operation of the rate increase from the moment its five-month suspension expired;[60] it was disapproved only because of its "inconsisten(cy) with the Economic Stabilization Program."[61] We must, then, determine the extent to which, if at all, the Commission could take into account the Economic Stabilization Act and the policies underlying it when considering rates pursuant to the Natural Gas Act.
 
 A. The Statute Utilized
 
 18
 At the outset, our analysis hinges on which body of legislation the Commission acted under when it ruled against Transco. This is more than a semantic issue, for orders issued under the Economic Stabilization Act may be challenged only in the District Court, with appeals to the Temporary Emergency Court of Appeals exclusively.[62] We have jurisdiction to entertain this case only if the Commission's order was formulated under the Natural Gas Act.[63]
 
 
 19
 Unfortunately, the statutory basis of the Commission's decision is somewhat less than clear. As we have noted, the Commission found Article IV invalid "only insofar ... as it (was) inconsistent with the Economic Stabilization Program."[64] Elsewhere, the order recited that the rate proceeding was "pending" and therefore was " 'saved' by Section 218 of the Economic Stabilization Act."[65] And there is some reason to believe that the Commission predicated its denial of rehearing on that legislation.[66]
 
 
 20
 Here again, however, we believe the Commission's current interpretation of the meaning of its 1974 order that it was simply importing Stabilization Act principles into the Gas Act[67] is much the more reasonable one. In its order it stated that it was attempting to harmonize the two statutes,[68] and the operative language of its decision declares that a rate increase at odds with Stabilization Act standards "would in turn be unjust and unreasonable within the meaning of the Natural Gas Act to the extent of such violation."[69] More importantly, this is the only reading of the order consistent with the Commission's longstanding policy of enforcing "the objectives and purposes of the (Economic Stabilization Act)" as a part of "the regulatory standards enunciated by Congress in the (Federal Power Act) and the (Natural Gas Act)."[70]
 
 
 21
 The idea that the Commission can look to policies undergirding other federal statutes when interpreting the Gas and Power Acts is hardly novel or controversial. For example, the Supreme Court has flatly declared that the Commission must consider the "fundamental national economic policy expressed in the antitrust laws" as part of the "public interest" standard of the Power Act;[71] the Court has also directed that account be taken of those aspects of federal statutes aimed at combatting employment discrimination when relevant to the establishment of "just and reasonable rates."[72] We ourselves have similarly noted the Commission's obligation to gauge the implications of laws as diverse as those in the anti-trust[73] and environmental[74] fields when reaching rate decisions. As we have said, the Commission's
 
 
 22
 exercise of authority conferred by the Natural Gas Act, may, and in some instances must, take account of policies set forth in another Federal statute, without undercutting the quality of its action as one taken under the Natural Gas Act and reviewable in accordance with its procedures. It could also be said that in a certain sense the (Commission's) action of making a determination of consistency with the Economic Stabilization Act of 1970 must necessarily reflect an authority granted by at least the general framework of the Natural Gas Act....[75]
 
 
 23
 The Stabilization Act, no less than numerous other pieces of legislation, embodies broad national policies designed to affect economic behavior at every level. Given the latitude traditionally accorded the Commission in interpreting the Gas Act's mandates,[76] as well as the "presumption of validity (that) attaches to each exercise of the Commission's expertise,"[77] we see no reason to quarrel with the Commission's conclusion that the Stabilization Act "supplemented the Federal Power Act and the Natural Gas Act in much the same way that the Environmental Policy Act of 1969 supplements those statutes."[78] Indeed, Transco has made no attempt whatsoever to shoulder " 'the heavy burden of making a convincing showing that (the Commission's decision) is invalid because it is unjust and unreasonable in its consequences.' "[79]
 
 B. Jurisdiction
 
 24
 Our authority to resolve cases featuring the interplay between the Natural Gas and Economic Stabilization Acts has not heretofore been completely settled. The question whether we possess the power to consider such issues has troubled us in the past, and not always have we found jurisdiction here. In two cases superficially similar to those at bar, Tennessee Gas Pipeline Co. v. FERC[80] and Municipal Intervenors Group v. FPC,[81] we have held that the jurisdiction resided in the Temporary Emergency Court of Appeals. Elsewhere we have declared that "where this court is asked to review an order of the Federal Power Commission raising ... issues which appear inextricably interwoven with issues arising under the Economic Stabilization Act .... (o)ur course, at least generally, will be to hold our review in abeyance until review by the District Court and (the Temporary Emergency Court of Appeals) is completed."[82]
 
 
 25
 On close inspection, however, it becomes clear that none of these decisions robs us of power to decide the instant controversy. In each, the critical question was whether Commission action resting indisputably upon the Stabilization Act was proper. The Temporary Emergency Court of Appeals has jurisdiction in cases "arising under (that Act) or under regulations or orders issued thereunder."[83] In Tennessee Gas Pipeline Co., we concluded that we lacked jurisdiction because "the rate charged by Tennessee Gas was allowable under the Natural Gas Act" and "the only residual issue is whether the rate is allowable under the Economic Stabilizaton Act...."[84] Similarly, in Municipal Intervenors Group, we expressly found that the Commission's action was predicated upon that legislation.[85] But more importantly, in the latter case we advanced the view that Commission decisions under the Gas Act are reviewable in this court even though they took Stabilization Act policies into account.[86]
 
 
 26
 As we have already said, the order before us was promulgated under the Gas Act.[87] It required a construction of that Act,[88] and the Commission's product was distinctively an interpretation thereof notwithstanding the indulgence of Stabilization Act policy reflections during the process.[89] The Gas Act is explicit in its provision that "(a)ny party to a proceeding (thereunder) aggrieved by an order issued by the Commission" may seek review in this court.[90] We think this straightforward language commands us to accept jurisdiction here.
 
 C. The Merits
 
 27
 At long last we are in position to consider the merits of Transco's argument, which in essence reduces to a single chain of reasoning. The Commission, Transco says, disallowed operation of the rate increase during the price-freeze period to avoid conflict with the Economic Stabilization Act. That legislation expired on April 30, 1974,[91] Transco continues, and with it the power to issue orders pursuant to the Act save in enforcement proceedings pending on that date or for acts committed prior thereto.[92] Transco points out that at one time the Commission stated that under the usual Gas Act criteria Article IV of the settlement agreement warranted approval, and since the Commission can no longer rely on the Stabilization Act, Transco asserts that the Commission's ruling cannot stand, and that Article IV governs.[93]
 
 
 28
 We find this argument seriously flawed. The Commission's order, we repeat, effectuates a decision made under the Gas Act, not the Stabilization Act.[94] It is true enough that "(t)he authority to issue and enforce orders and regulations under (the Stabilization Act) expire(d) at midnight April 30, 1974,"[95] and that exceptions to this proposition have been read narrowly.[96] But the mere fact that power to promulgate Stabilization Act orders has lapsed does not mean that the erstwhile existence of the Act and the anti-inflation policy it mirrored can no longer be taken into account by the Commission when it considers the propriety of a rate increase encompassing the era during which the Act was in effect.[97] So long as the Commission accurately interprets such policy,[98] there is no reason why it cannot be assigned the role in which it bears relevantly on the ratemaking function.
 
 
 29
 Surely it was within the Commission's purview to determine whether a regulated entity should be permitted retrospectively to charge higher gas rates than could have been legally demanded when the gas was supplied.[99] And it cannot be gainsaid that the Commission was on solid ground when it held that collection of revenues foregone during the price freeze would wage war with the fundamental theme of the Stabilization Act. Regulations promulgated thereunder imposed a flat ban on any "retroactive increase in prices ... for goods or services sold ... while those prices ... were subject to past or present provisions of this title."[100] Indeed, Transco nowhere suggests that the Commission's interpretation of Stabilization Act anti-inflation policy was in error; instead, Transco argues simply that the Commission cannot now proceed under that legislation, and consequently that Article IV of the settlement agreement must stand. We conclude that, on the contrary, the Commission acted under the Natural Gas Act when it disapproved Article IV, and the challenged order is accordingly
 
 
 30
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 293(a) (1976)
 
 
 [1]
 Pursuant to the Department of Energy Organization Act. Pub.L.No. 95-91, § 402(a), 91 Stat. 565 (1977), 42 U.S.C. § 7172(a) (Supp. III 1979), most of the functions of the Federal Power Commission were transferred to the Federal Energy Regulatory Commission, the respondent-appellee herein. To preserve the present-tense style of this opinion as far as possible, we use the word "Commission" to refer to the Federal Power Commission in connection with events preceding October 1, 1977, the effective date of the Act, and to the Federal Energy Regulatory Commission in connection with those occurring thereafter
 
 
 [2]
 See note 42 infra. On the orders under review, see text infra at notes 39-41
 
 
 [3]
 15 U.S.C. § 717c(a) (1976)
 
 
 [4]
 Id. § 717c(d)
 
 
 [5]
 Id. § 717c(e)
 
 
 [6]
 See generally 18 C.F.R. §§ 154.38 to 154.41, 154.63 (1980)
 
 
 [7]
 Economic Stabilization Act of 1970, Pub.L.No. 91-379, 84 Stat. 799 (1970), reprinted as amended following 12 U.S.C. § 1904 (1976)
 
 
 [8]
 See Economic Stabilization Act of 1970, § 218, reprinted as amended following 12 U.S.C. § 1904 (1976)
 
 
 [9]
 Id. § 203(a), reprinted as amended following 12 U.S.C. § 1904 (1976)
 
 
 [10]
 18 C.F.R. § 2.90(b) (1980)
 
 
 [11]
 See 15 U.S.C. § 717(b) (1976)
 
 
 [12]
 Exec. Order No. 11723, 38 Fed.Reg. 15765 (June 13, 1973)
 
 
 [13]
 Joint Appendix (J.App.) 1-3
 
 
 [14]
 J.App. 2
 
 
 [15]
 J.App. 3
 
 
 [16]
 See Transcontinental Gas Pipe Line Corp., Docket No. RP 73-69, 51 F.P.C. 1243, 1245 (1974), J.App. 6
 
 
 [17]
 Id., 51 F.P.C. at 1246, J.App. 7
 
 
 [18]
 Id
 
 
 [19]
 Id
 
 
 [20]
 Id
 
 
 [21]
 See Appendix to Brief of Respondent-Appellee (A.App.) 4a. See also A.App. at 6a
 
 
 [22]
 A.App. 15a
 
 
 [23]
 Transcontinental Gas Pipe Line Corp. v. Department of the Treasury, Civ.No. 74-1389 (D.D.C.1974)
 
 
 [24]
 See Economic Stabilization Act of 1970, § 218, reprinted as amended following 12 U.S.C. § 1904 (1976)
 
 
 [25]
 Economic Stabilization Act of 1970, § 211(b), reprinted as amended following 12 U.S.C. § 1904 (1976)
 
 
 [26]
 United States v. State of California, 504 F.2d 750 (Temp.Emer.Ct.App.1974), cert. denied, 421 U.S. 1015, 95 S.Ct. 2423, 44 L.Ed.2d 864 (1975)
 
 
 [27]
 State of California dealt with a California law, effective on July 1, 1973, providing salary increases for state employees. On August 29, 1973, the Cost of Living Council declared some of those increases excessive and issued a limiting order. The employees sought a writ of mandamus to compel California officials to obey the statute in full, and a state court rendered judgment for the employees, effective on May 19, 1974. On May 8, however, the United States sought injunctive relief in a federal district court to prevent California from implementing the pay increases in contravention of the Council's order. See id. at 752. On review of a preliminary injunction in favor of the Government, the Temporary Emergency Court of Appeals concluded that "by the explicit terms of Section 218 (of the Economic Stabilization Act), the (Council) and the courts ... lost their authority ... on April 30, 1974...." Id. at 753. The two statutory exceptions to § 218 for "pending proceedings" and for proceedings "based upon any act committed prior to May 1, 1974," see Economic Stabilization Act of 1970, § 218, reprinted as amended following 12 U.S.C. § 1904 (1976) did not help the Government: the exemption for "pending proceedings" was held to be limited to enforcement proceedings, and that for "acts committed" prior to the statute's expiration was relevant only if they were "violations of the Act ... that ... could be the basis for a civil or criminal enforcement proceeding" that is, an actual payout. United States v. State of California, supra note 26, 504 F.2d at 755 (emphasis in original)
 
 
 [28]
 J.App. 16
 
 
 [29]
 J.App. 17
 
 
 [30]
 See FERC Order Disapproving Retroactive Increase in Frozen Rates, and Directing Refunds (Order), Docket Nos. RP 73-3, RP 73-69 and RP 72-99 (Jan. 18, 1978) at 8, J.App. 25
 
 
 [31]
 See text supra at note 18
 
 
 [32]
 See Order, supra note 30, J.App. 18-37
 
 
 [33]
 Id. at 13, J.App. 30
 
 
 [34]
 Id. at 15, J.App. 32
 
 
 [35]
 Id. at 16, J.App. 33
 
 
 [36]
 Id. at 18, J.App. 35
 
 
 [37]
 Id. at 13, J.App. 30
 
 
 [38]
 See text supra at notes 19-20
 
 
 [39]
 Order, supra note 30, at 13, J.App. 30
 
 
 [40]
 Id. at 20, J.App. 37
 
 
 [41]
 FERC Order Denying Rehearing and Granting a Stay, Docket Nos. RP 73-3, RP 73-69, RP 72-99 (May 16, 1978), J.App. 55-57. The Commission did, however, issue a stay pending Transco's appeal. Id. at 3, J.App. 57
 
 
 [42]
 Transco also sought relief in the District Court for the District of Columbia pursuant to §§ 210 and 211 of the Economic Stabilization Act. Transcontinental Gas Pipe Line Corp. v. FERC, Civ. No. 78-1241 (D.D.C. Sept. 28, 1978). That court dismissed Transco's complaint for lack of jurisdiction, holding that the Commission's order had been issued pursuant to the Natural Gas Act and that accordingly this court was the proper forum for judicial review. Id. Doubting which legislation provided the basis for the order, Transco appealed to this court, No. 78-2193, and as well to the Temporary Emergency Court of Appeals, which stayed its hand pending resolution here. Transcontinental Gas Pipe Line Corp. v. FERC, No. D.C.-51 (Temp.Emer.Ct.App.1978). No. 78-2193, meanwhile, was consolidated with Transco's petition for direct review, No. 78-1632. Transcontinental Gas Pipe Line Corp. v. FERC, Nos. 78-1632 & 78-2193 (D.C.Cir. Dec. 22, 1978). In light of our conclusion that the Commission's order was promulgated under the Natural Gas Act, Part IV A infra, in No. 78-2193 we affirm the District Court's judgment
 
 
 [43]
 See Mobil Oil Corp. v. FPC, 187 U.S.App.D.C. 112, 117, 570 F.2d 1021, 1026 (1978); Tennessee Gas Pipeline Co. v. FPC, 164 U.S.App.D.C. 130, 133, 504 F.2d 199, 202 (1974)
 
 
 [44]
 Riley v. General Mills, Inc., 346 F.2d 68, 70 (3d Cir. 1965). Accord, Cole v. Benavides, 481 F.2d 559 (5th Cir. 1973); United States v. Schaeffer, 319 F.2d 907, 911 (9th Cir. 1963), cert. denied, 376 U.S. 943, 84 S.Ct. 798, 11 L.Ed.2d 767 (1964); Enerdyne Corp. v. Wm. Lyon Dev. Co., Inc., 488 F.2d 1237 (10th Cir. 1973)
 
 
 [45]
 Approval by a third party is certainly a condition precedent. See, e. g., Los Angeles Rams Football Club v. Cannon, 185 F.Supp. 717 (S.D.Calif.1960)
 
 
 [46]
 J.App. 2
 
 
 [47]
 J.App. 3
 
 
 [48]
 See text supra at notes 21-22
 
 
 [49]
 See text supra at note 28
 
 
 [50]
 Transcontinental Gas Pipe Line Corp., supra note 16, 51 F.P.C. at 1246, J.App. 7
 
 
 [51]
 Id
 
 
 [52]
 See text supra at note 50
 
 
 [53]
 See text supra at note 10
 
 
 [54]
 Transcontinental Gas Pipe Line Corp., supra note 16, 51 F.P.C. at 1246, J.App. 7
 
 
 [55]
 Id. at 1245, J.App. 6
 
 
 [56]
 See text supra at note 18
 
 
 [57]
 Order, supra note 30, at 15, J.App. 32. See also id. at 18, J.App. 35
 
 
 [58]
 Belco Petroleum v. FERC, 191 U.S.App.D.C. 157, 162-163, 589 F.2d 680, 685-686 (1978); Gillring Oil Co. v. FERC, 566 F.2d 1323, 1325 (5th Cir.), cert. denied, 439 U.S. 823, 99 S.Ct. 91, 58 L.Ed.2d 115 (1978). Cf. Chesapeake & O. Ry. Co. v. United States, 187 U.S.App.D.C. 241, 245, 571 F.2d 1190, 1194 (1977)
 
 
 [59]
 Belco Petroleum v. FERC, supra note 58, 191 U.S.App.D.C. at 163, 589 F.2d at 686
 
 
 [60]
 Order, supra note 30, at 19, J.App. 36
 
 
 [61]
 Id. See also text supra at note 55
 
 
 [62]
 Economic Stabilization Act of 1970, § 211, supra note 7, reprinted as amended following 12 U.S.C. § 1904 (1976)
 
 
 [63]
 See 15 U.S.C. § 717r(b) (1976)
 
 
 [64]
 See text supra at note 61
 
 
 [65]
 Order, supra note 30, at 14, J.App. 31
 
 
 [66]
 Order, supra note 41, at 2-3, J.App. 56-57
 
 
 [67]
 See Brief for Appellees at 30-31
 
 
 [68]
 Order, supra note 16, at 16-17, J.App. 32-33
 
 
 [69]
 Id. at 16, J.App. 33
 
 
 [70]
 FPC Order No. R-437B (June 19, 1973), reprinted at A.App. 25a, 26a-27a
 
 
 [71]
 Gulf States Utils. Co. v. FPC, 411 U.S. 747, 759, 93 S.Ct. 1870, 1878, 36 L.Ed.2d 635, 644 (1973). Cf. McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544 (1944)
 
 
 [72]
 NAACP v. FPC, 425 U.S. 662, 666-669, 96 S.Ct. 1806, 1809-1811, 48 L.Ed.2d 284, 289-291 (1976)
 
 
 [73]
 Northern Natural Gas Co. v. FPC, 130 U.S.App.D.C. 220, 226, 399 F.2d 953, 959 (1968)
 
 
 [74]
 Calvert Cliffs' Coordinating Comm., Inc. v. United States Atomic Energy Comm'n, 146 U.S.App.D.C. 33, 36, 449 F.2d 1109, 1112 (1971) ("every federal agency and department" must consider the environmental impact of its actions)
 
 
 [75]
 Municipal Intervenors Group v. FPC, 153 U.S.App.D.C. 373, 376-379, 473 F.2d 84, 89-90 (1972) (citation omitted)
 
 
 [76]
 See Permian Basin Area Rate Cases, 390 U.S. 747, 767, 88 S.Ct. 1344, 1360, 20 L.Ed.2d 312, 336 (1968); Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951); Colorado Interstate Gas Co. v. FPC, 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206 (1945); FPC v. Hope Natural Gas Co., 320 U.S. 591, 601, 64 S.Ct. 281, 287, 88 L.Ed. 333, 344 (1944); FPC v. Natural Gas Pipeline Co., 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037 (1942)
 
 
 [77]
 Permian Basin Area Rate Cases, supra note 76, 390 U.S. at 767, 88 S.Ct. at 1360, 20 L.Ed.2d at 336
 
 
 [78]
 Order, supra note 30, at 13, J.App. 30
 
 
 [79]
 Permian Basin Area Rate Cases, supra note 76, 390 U.S. at 767, 88 S.Ct. at 1360, 20 L.Ed.2d at 336, quoting FPC v. Hope Natural Gas Co., supra note 76, 320 U.S. at 602, 64 S.Ct. at 288, 88 L.Ed. at 345
 
 
 [80]
 200 U.S.App.D.C. 156, 626 F.2d 1020 (1980)
 
 
 [81]
 Supra note 75
 
 
 [82]
 Connecticut Mun. Group v. FPC, 162 U.S.App.D.C. 260, 265, 498 F.2d 993, 998 (1974). See also Municipal Elec. Utils. Ass'n v. FPC, 158 U.S.App.D.C. 188, 191-192, 485 F.2d 967, 970-971 (1973)
 
 
 [83]
 Economic Stabilizaton Act of 1970, § 211(b)(2), reprinted as amended following 12 U.S.C. § 1904 (1976)
 
 
 [84]
 Tennessee Gas Pipeline Co. v. FERC, supra note 80, 200 U.S.App.D.C. at 157, 626 F.2d at 1021
 
 
 [85]
 Municipal Intervenors Group v. FPC, supra note 75, 153 U.S.App.D.C. at 377, 473 F.2d at 88
 
 
 [86]
 Id. at 378, 473 F.2d at 89
 
 
 [87]
 See Part IV A supra
 
 
 [88]
 See text supra at notes 67-70
 
 
 [89]
 See text supra at notes 67-70
 
 
 [90]
 15 U.S.C. § 717r(b) (1976)
 
 
 [91]
 See Economic Stabilization Act of 1970, § 218, reprinted as amended following 12 U.S.C. § 1904 (1976)
 
 
 [92]
 These exceptions are not relevant here. Consideration of Transco's rate request was not an enforcement proceeding; and to be actionable the acts committed prior to expiration of the ESA must be violations of the statute in this case the actual increased charges. See note 27 supra
 
 
 [93]
 Brief for Petitioner at 13-16
 
 
 [94]
 See Part IV A supra
 
 
 [95]
 Economic Stabilization Act of 1970, § 218, reprinted as amended following 12 U.S.C. § 1904 (1976)
 
 
 [96]
 See note 27 supra
 
 
 [97]
 Thus State of California, on which Transco relies extensively, see Brief for Petitioner at 13-16, is completely inapposite. There the Temporary Emergency Court of Appeals simply gave effect to the plain language of the Economic Stabilization Act specifying when authority to issue orders thereunder lapsed. See note 27 supra. That hardly means that the anti-inflation program reflected by the Stabilization Act must be ignored when rates are set under another statute. Transco has pointed to nothing in the language or the legislative history of the Act let alone in State of California that commands such a broad result
 
 
 [98]
 It should be noted that the proper construction of the Economic Stabilizaton Act is not at issue here. If the outcome of the case turned on an issue of that sort, it is at least arguable that we would have to find jurisdiction in the Temporary Emergency Court of Appeals. See Connecticut Mun. Group v. FERC, supra note 82, 162 U.S.App.D.C. at 265, 498 F.2d at 998. But Transco does not challenge the Commission's understanding of the Act's anti-inflation program, or claim that the increased rate would not have contravened it. Transco argues instead that the Commission could not look to the Act or its policies at all
 
 
 [99]
 See NAACP v. FPC, supra note 72, 425 U.S. at 668, 96 S.Ct. at 1810-1811, 48 L.Ed.2d at 290-291
 
 
 [100]
 6 C.F.R. § 150.1(d) (1974)